In the Matter of Brookdale Hospital Medical Center, Respondent, v David Axelrod, as Commissioner of the New York State Department of Health, et al., Appellants.

Third Department, November 13, 1986

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Alan W. Rubenstein* and *Peter J. Dooley* of counsel), for appellants.

*Hayt, Hayt & Landau (Laurence Jeffrey Weingard, P. C., David DeCerbo, P. C., Aaron R. Cahn* and *Mark A. Hartman* of counsel), for respondent.

**OPINION OF THE COURT**

KANE, J.

Petitioner is a hospital which provides a service called psychiatric day night service (hereinafter PDN service). Pursuant to Public Health Law article 28, petitioner submitted a cost report for the 1983 rate year for its PDN service to respondent Commissioner of Health (hereinafter respondent) so that respondent could determine petitioner's reimbursement rate for visits by Medicaid recipients. Respondent calculated petitioner's reimbursement rate to be $132.24 per day using a cost-based, inflation-adjusted system pursuant to the Public Health Law. Pursuant to a general review and a consultation with the Division of the Budget, however, respondent froze all PDN rates at 1980 levels. Respondent accomplished this by applying an informal rule whereby the approved rate was the "lower of" the cost-based, inflation-adjusted number or the rate from the previous year. Based on the "lower of" rule, respondent approved a PDN reimbursement rate at $83.81 per day for petitioner.

Petitioner commenced a proceeding pursuant to CPLR article 78 to have its PDN rate of $83.81 annulled and to have respondents directed to certify its PDN rate as $132.24 per

day. Petitioner contended that respondent's "lower of" rule was illegal and arbitrary and capricious. Respondents answered that the "lower of" rule was proper, that the "lower of" rule was an attempt to set a "maximum allowable payment" pursuant to Public Health Law § 2807 (2) (b), and that even if the rate of $83.81 per day was annulled, Special Term should remit the matter to respondent since respondent still had discretion as to how to calculate the rate in question. Special Term held that the "lower of" rule was illegal, that respondent never attempted to set a "maximum allowable payment" pursuant to Public Health Law § 2807 (2) (b), and that the only possible way to calculate petitioner's reimbursement rate resulted in a rate of $132.24 per day. Special Term also held that to allow respondent to recalculate petitioner's PDN reimbursement rate using a different methodology would treat petitioner in an impermissibly selective manner, and it would constitute impermissible retroactive rate setting. Special Term, therefore, annulled petitioner's PDN reimbursement rate of $83.81 per day and ordered respondents to establish the rate at $132.24 per day. This appeal by respondents ensued.

■ Respondents concede that Special Term correctly annulled the determination establishing petitioner's PDN rate at $83.81 per day. However, respondents assert that Special Term erroneously directed respondents to set the rate at $132.24 per day. We agree.

Public Health Law § 2807 (2) (b) provides guidelines for the setting of rates for reimbursement of outpatient and emergency care. During the period in question, the statute provided "rates of payment by governmental agencies for the operating cost component of general hospital outpatient and emergency services shall be based on the operating costs reported in the nineteen hundred seventy-nine cost report adjusted by the trend factor" (Public Health Law § 2807 [2] [b]). The trend factor is an inflation factor which is determined pursuant to Public Health Law § 2808-c (8). It is not disputed that these procedures for outpatient rates apply to PDN services.

Public Health Law § 2807 (2) (b) continues that the inflation-adjusted, cost-based rate ($132.24 herein) will be used: "provided, however, that the maximum payment for operating cost component of outpatient and emergency services shall be sixty dollars plus the addition of the capital cost per visit * * * The commissioner may waive the maximum allowable payment

and limitations on the rate of payment as prescribed herein * * * to provide for the reimbursement of, specialized services having separately identifiable costs and statistics * * * The commissioner shall promptly promulgate rules and regulations necessary to identify such services" (Public Health Law § 2807 [2] [b]). In the case at bar, although respondent never promulgated rules to identify the "special services" which are waived from the $60 maximum amount payable, it is uncontested that PDN services were considered as such special services.

The statute further provides that: "Where the commissioner waives the maximum allowable payment for any specified service he may, in accordance with the foregoing criteria and such other criteria as he deems appropriate, establish a maximum allowable payment for such specified service" (Public Health Law § 2807 [2] [b]).

A review of the record reveals that respondent has not properly exercised the discretion given to him. Respondent has failed to promulgate any rules or regulations defining what are specialized services as directed by the statute. Accordingly, respondent has been forced to concede that PDN services are a specialized service. Furthermore, there is no record of any across-the-board cap for PDN services. The only action which respondent has taken is to decide that PDN rates be "frozen" at 1980 rates "pending a more thorough review in this area and development of appropriate cost ceilings or other efficiency standards". Respondent now concedes that this action was improper. Consequently, the issue distills to a consideration of whether Special Term should have allowed respondent to rectify its prior errors.

In this regard, respondents argue that the matter should be remitted to allow them to set a "maximum allowable payment" for PDN services. Special Term held that since no such limit was imposed in the first place, any attempt at establishing reimbursement rates for 1983 in 1986 would constitute impermissible retroactive rate setting. Respondents contend that impermissible retroactive rate setting only occurs when rates are reduced after services have been rendered (see, Matter of Jordan Health Corp. v Axelrod, 67 NY2d 935). Respondents assert that any new rate would be greater than $83.81; therefore, it would not involve impermissible rate setting. We agree with respondents' contention. In addition, it should be noted that the instant $83.81 rate has been under challenge since it was apparently timely established by re-

spondent. Therefore, the only assurances petitioner ever had from respondents was that the reimbursement rate would not be below $83.81.

■■ Consequently, we remit the matter to respondents for a proper determination of petitioner's reimbursement rate. It is not the function of this court to determine petitioner's proper reimbursement rate, a function given by the Legislature to respondents (cf. Matter of Severino v Ingraham, 44 NY2d 763). Rather, it is the function of this court to determine whether those rates are authorized by law (CPLR art 78). If after remittal petitioner is still dissatisfied with its rate, it may commence a new proceeding.

Having invalidated the challenged rate, we find it premature to address petitioner's argument that the use of a rate-to-rate method of calculating its PDN reimbursement rate for 1983 would violate the equal protection clause.

MAHONEY, P. J., CASEY, WEISS and LEVINE, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as set petitioner's reimbursement rate at $132.24 per day; matter remitted to respondent Commissioner of Health for further proceedings not inconsistent herewith; and, as so modified, affirmed.