LEWIS LUBITZ et al., Individually and as Limited Partners of Heather Associates, on Behalf of Themselves and All Others Similarly Situated and in the Right of Heather Associates, Plaintiffs, v GEORGE MEHLMAN, Individually and as General Partner of Heather Associates, Respondent, et al., Defendants. MORRIS FELLNER et al., Appellants.

First Department, January 12, 1993

## APPEARANCES OF COUNSEL

*Alan J. Firestone* of counsel, Brooklyn *(Firestone & Harris,* attorneys), for respondent.

*Kevin L. Smith* of counsel, New York City *(Stuart M. Riback* and *Judith Norman* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for Morris Fellner, appellant.

*Herbert Monte Levy,* New York City, and *Blum, Gersen & Stream,* New York City, for Louis Grossman, appellant.

### OPINION OF THE COURT

MILONAS, J.

The underlying action herein, which was brought by some limited partners against the remaining partners of Heather Associates and others, was discontinued pursuant to a stipulation of settlement dated June 18, 1987 and an amendment thereto dated November 13, 1987. However, George Mehlman, a limited partner of Heather and originally a defendant in this matter, has moved to hold in contempt Harry Grossman, the now-deceased receiver for the assets of Heather and his attorney, Morris Fellner, alleging that they breached their fiduciary responsibility and were in violation of various court orders. In that regard, Grossman was appointed receiver in 1977 by a court order that decreed as follows:

"ORDERED, that Harry Grossman, Esq. of 515 Madison Ave., NY City [752-4220] be and he hereby is appointed Temporary Receiver of all assets and properties of HEATHER ASSOCIATES for the purposes of collecting and conserving all its assets pending the determination of this action pursuant to the provisions of Article 64 of the CPLR, and for the purpose of disposing of said assets or any part thereof, pursuant to the further order and directions of this Court; and it is further * * *

"ORDERED, that FELLNER AND ROVINS, ESQS., of 230 Park Avenue, New York, New York, be and hereby are designated as the attorneys For the Temporary Receiver; and it is further * * *

"ORDERED, that the Temporary Receiver, in accordance with the provisions of Section 6401 of the CPLR, is authorized to hold the property and assets herein, taking any and all proceedings as may be necessary to collect, administer and preserve it and, further, may sell, sue for, and collect any assets, claims or debts of HEATHER ASSOCIATES and it is further * * *

"ORDERED, that Plaintiffs' application for a preliminary injunction pursuant to CPLR 6301 is granted to the extent that the Defendants, GEORGE MEHLMAN, HARVEL DEVELOPMENT CORP., GERALD WEINSTEIN, BRELL REALTY CORP., and MEHLMAN MANAGEMENT CORP. and/or their agents, pending the determination of this action are enjoined and prohibited from assigning, transferring or in any way disposing of any funds or

property of HEATHER ASSOCIATES in their possession and/or control."

When Grossman became receiver of Heather, its only tangible assets were a parcel of land known as the "Alley fee" and a wraparound mortgage note of $25 million as part payment for other leased parcels which had been purchased from Heather by Gerald Guterman, a real estate developer. The Alley fee, having been leased on a long term basis to Guterman, with an option to renew for another 99 years at the same rent, was unproductive. Even the $16,000 annual rent was not being paid to Heather but to the mortgagee of the fee, Teachers Insurance. Further, Guterman had an option to purchase the property for $25,000. Heather was also in default under a $6 million note, and foreclosure was imminent. The order of appointment for Grossman directed "that the promissory note in the face amount of $25,000,000.00 made by MORAL TWO CORPORATION, to the order of HEATHER ASSOCIATES, and dated December 4, 1975, shall be deposited with FELLNER AND ROVINS, ESQS., of 230 Park Avenue, New York, New York, as Escrowees, to be held by them until final adjudication of this Court or further order of this Court".

In June of 1979, while Guterman was involved in bankruptcy proceedings, Grossman entered into a contract with him providing for the transfer of the deed to the Alley fee for a total of $600,000, of which $150,000 was payable to Heather and $450,000 to the receiver, his attorneys and accountant, but these payments were conditioned upon the sale of apartments under a proposed conversion plan. In addition, the agreement waived Heather's interest in the $25 million wraparound note and relieved Guterman from a claim for $5 million by Heather in the bankruptcy proceedings. It should be noted that the subject contract required that it be approved by the court. It was signed by Grossman and Guterman on June 28, 1979, prior to the subsequent dismissal of the bankruptcy proceedings, and by Heather on August 6, 1979, after the bankruptcy proceedings were no longer in effect. Court approval was then sought. However, the court denied the receiver's application without prejudice to enable the Fischer Group, the party from whom the leaseholds had originally been acquired, to move to intervene if it so chose in order to protect its interest. A letter agreement, dated December 3, 1979, was then executed, which provided that "[a]ll conditions precedent to the delivery of the deed * * * have been waived or satisfied, including without limitation, the condition requir-

ing approval of the Supreme Court of the State of New York which is deemed to have been complied with."

Notwithstanding that the deed to the Alley fee was released to Guterman, Grossman again attempted to procure the court's permission for the deal. In largely denying the motion, the court stated that: "Motion by the temporary receiver is granted only to the extent of setting down for a hearing the issues of attorneys' fees, receivers' fees and accountants' fees. In all other respects, the motion is denied without prejudice to renewal upon a sufficient showing of why the receiver seeks court approval of a transaction which he states was in his original mandate under the original order appointing said receiver and upon a further showing of why the court should approve Lubitz' execution and performance of a written agreement dated June 27, 1979, since Lubitz is not an officer of this court, and it appears that the court appointed receiver has the sole power to enter into agreements to sell the receivership property in issue."

Lewis Lubitz, one of the limited partners of Heather, was retained by Guterman as a consultant in a separate agreement incorporated into the contract between Grossman and Guterman. Accordingly, Lubitz had joined Grossman in petitioning the court for approval of the arrangement. In any event, in 1983, Mehlman brought an action to invalidate the transfer of the deed and restore ownership of the property to Heather. The matter was later dismissed on the ground that such an action had to be commenced by the receiver unless and until he was disqualified by the court, and the Appellate Division, Second Department, affirmed (*Mehlman v Guterman Homes Corp.*, 121 AD2d 523). Mehlman was more successful in persuading the Supreme Court that he was entitled to relief in the form of a contempt finding against the receiver. The court, concluding that Grossman and Fellner had both acted improperly in connection with their responsibilities to Heather, that delivery of the deed to Guterman was unauthorized and in violation of the court's order and that Grossman had contravened his fiduciary duties, terminated the receivership and directed that both he and Fellner pay damages to Mehlman for civil contempt, as well as "disgorge and return" specified fees and payments.

■ Mehlman, however, lacked standing to institute any contempt proceeding, and his motion should have been denied. The underlying action was commenced when Lubitz and other limited partners sued Mehlman and Harvel Development

Corporation, the general partner of Heather wholly owned and controlled by Mehlman, and others, alleging wrongdoing by Mehlman. Although Mehlman subsequently settled with his partners, a majority of whom had consented to the deal with Guterman, and it was arranged that he would receive Heather's bank accounts and other funds, there is nothing in the agreement that bestows any succession rights or claims upon him. Indeed, pursuant to paragraph 9 of the settlement agreement, Heather was expressly continued in existence. The court was simply incorrect in deciding that Mehlman had succeeded to all of Heather's rights, title and interests. Yet, even if Mehlman were the successor to Heather's rights, the motion for contempt was brought by him personally and not in the name of Heather and at no time did Mehlman ever endeavor to recover on behalf of Heather. Consequently, he may not seek relief for any purported injury perpetrated by Grossman and Fellner upon Heather.

█ Equally crucial is the fact that, regardless of Mehlman's standing to apply for contempt in the first place, the order of appointment does not clearly prohibit the receiver from selling the Alley fee without court permission. While the order at one point appears to make disposal of the assets and properties of Heather subject to the further direction of the court, it then proceeds to authorize the receiver to "collect, administer and preserve" the assets and property of Heather, as well as "sell, sue for and collect" any of its "assets, claims or debts". Thus, Grossman did not unreasonably construe his powers as including the right to sell the property of Heather. At best, the order of appointment was ambiguous, and it is settled that "[i]n order to find that contempt has occurred in a given case, it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect" *(Matter of McCormick v Axelrod,* 59 NY2d 574, 583). The fact that Supreme Court Justices had twice declined to approve the transaction when specifically requested to do so in no way negates the ambiguity of the original order of appointment. Significantly, the second Judge, questioning why the receiver was seeking such approval while simultaneously maintaining that court sanction was unnecessary, remarked that "it appears that the court appointed receiver has the sole power to enter into agreements to sell the receivership property in issue."

█ Similarly, by allowing the receiver to sell Heather's claims or debts, the appointment order cannot be held to have

unequivocably precluded Grossman from waiving Heather's interest in the $25 million note so as to support contempt for Grossman and Fellner in this respect as well. Moreover, since the note was lacking in equity, it being a defaulted nonrecourse obligation of an insolvent company secured by an unrecorded third mortgage, its loss or waiver did not impair, impede, defeat or prejudice the interests of Heather in any manner. Finally, Fellner cannot personally be deemed in contempt in connection with the note as the appointment order directs that the note be held by the law firm of Fellner & Rovins, not Fellner individually. As for the third contempt perceived by the court when it determined that Grossman and Fellner had wrongly permitted Schlomo Segall, as president of Harvel, to execute certain documents in contravention of the order of appointment, this theory was never asserted in Mehlman's motion, and, at any rate, Harvel had no power to do anything. Since the sole authority to convey Heather's assets rested with the receiver, any signatures on behalf of Harvel were inconsequential. While the court determined that Segall was the agent of Grossman and Fellner, there is absolutely no evidence, either testimony or a document, to demonstrate that Grossman or Fellner had instructed Segall to act for them or for Harvel.

■ ■ There is also no indication whatever that Grossman violated his fiduciary duties to Heather or that Fellner contravened his "obligations as attorney to the receiver and/or as attorney owing an obligation to Heather." Mehlman's motion, at any rate, does not accuse Fellner of breaching his fiduciary responsibilities; it merely requests that he be held in contempt. However, Fellner did not represent Heather, but Grossman. Although part of Fellner's job was to counsel Grossman in safeguarding Heather's interests, and, as a court-appointed lawyer, Fellner was under court supervision, he was still Grossman's counsel rather than Heather's. Accordingly, only Grossman could sue Fellner for malpractice and complain of his having violated his fiduciary duties. Mehlman certainly was not warranted in doing so. Further, in view of Heather's precarious financial situation and the possibility that its interest in the note and the heavily encumbered Alley fee could both be completely wiped out, it can hardly be found that Grossman's decision to enter into the contract with Guterman was so unreasonable as to justify considering him in contravention of his fiduciary responsibilities. In fact, none of the

actions undertaken by either Grossman or Fellner are clearly contrary to their fiduciary duties.

■ Since the motion for contempt against Grossman and Fellner should have been denied, Mehlman is not entitled to any damages and/or counsel fees. Yet, even if damages had been warranted, the court's assessment of them was entirely speculative. The Judge declined to adopt the opinion as to value of Mehlman's expert witness, nor did she rely upon the testimony of the expert for the receiver and his counsel, who stated that value could only be established by capitalizing the $16,000 per annum income, which came to $151,000 and was subject to the $25,000 option. The court, instead, chose to accept the position advanced by a representative of Jamaica Savings Bank, which had never even considered purchasing the property in 1979. The witness, who was not a real estate expert, asserted that the first time that the bank indicated any willingness to acquire the fee interest was in 1982. Thus, based upon a hypothetical value to a particular buyer, the bank, some three years after the transaction in question had taken place, the court decided what the conveyance would have been worth in 1979. The court, moreover, made its determination without ever taking into account the fact that the fee was burdened by Guterman's $25,000 option to purchase and a judgment of foreclosure. The Judge simply endeavored to avoid the problem created by the property's encumbrances by declaring that the option had been extinguished in 1979 when Teachers Insurance had foreclosed and assigned the mortgage to Guterman notwithstanding that the transfer did not actually occur until 1983. In reality, considering the various impediments on the Alley fee, it was virtually without value in 1979, and there can be no finding of contempt absent prejudice to a party to the litigation *(see, Matter of McCormick v Axelrod, supra)*.

The court was similarly incorrect in equating the purported value of Heather's equity in the fee with the amount of the damages. In order to realize its equity, Heather would have had to pay off all of the encumbrances at the foreclosure sale, and Heather was without the resources to accomplish this. Indeed, Heather would have lost its entire equity at the sale unless the purchaser agreed to pay more than the amount of the encumbrances, but this, too, is purely speculative. The court improperly treated the property as if it were a fee simple absolute rather than as a fee burdened by a 168-year leasehold at an annual rental of $16,000 plus the option to

purchase. It is, additionally, unclear why the receiver was directed to disgorge his commissions when they had been earned in the period preceding the arrangement concerning the Alley fee and were based upon his recovery from Mehlman of more than $900,000 that Mehlman had converted from Heather. Indeed, the amount of the commissions was set by this Court (95 AD2d 690). The situation is the same with respect to Fellner since, in both instances, their services were performed at a time when it is undisputed that they were not engaged in any misbehavior, and there is absolutely no relationship between the subject commissions and the allegedly contemptuous conduct.

 Finally, although the Supreme Court rejected the defense of lack of clean hands, it is evident that Mehlman acted reprehensibly throughout the course of Heather's travails and, in fact, was largely responsible for its problems. Not only did he misappropriate $900,000 from Heather, but he intentionally defaulted in the foreclosure action instituted by Teachers Insurance. He also never objected to the receiver's proposal to dispose of the Alley fee to Guterman. Under the circumstances, it would be extremely anomalous for Mehlman now to recover for contempt against those persons who were striving to untangle the financial quagmire into which his actions had thrust it.

Consequently, the order of the Supreme Court, New York County (Kristin Booth Glen, J.), entered on May 5, 1992, which, *inter alia*, held Morris Fellner and Louis Grossman in civil contempt, should be reversed on the law, the facts and in the exercise of discretion to the extent appealed from and the motion for contempt denied, the award of counsel fees to George Mehlman in the prosecution of the contempt proceedings denied, and all directives requiring Fellner and Grossman to return and/or pay fees and damages set aside, without costs or disbursements.

SULLIVAN, J. P., CARRO and ROSENBERGER, JJ., concur.

Order of the Supreme Court, New York County, entered on May 5, 1992, which, *inter alia*, held Morris Fellner and Louis Grossman in civil contempt, is reversed on the law, the facts, and in the exercise of discretion to the extent appealed from

and the motion for contempt denied, the award of counsel fees to George Mehlman in the prosecution of the contempt proceedings denied, and all directives requiring Fellner and Grossman to return and/or pay fees and damages set aside, without costs or disbursements.