[629 NYS2d 335]

NEW YORK STATE ASSOCIATION OF COUNTIES, Respondent, v
DAVID AXELROD, as Commissioner of the New York State
Department of Health, et al., Appellants.

Third Department, July 13, 1995

## APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Victor Paladino* and *Peter G. Crary* of counsel), for appellants.

*Cadwalader, Wickersham & Taft,* New York City *(Peter G. Bergmann, Kathy Hirata Chin* and *William J. Natbony* of counsel), for respondent.

## OPINION OF THE COURT

WHITE, J.

This contempt application has its origins in the adoption by the State Department of Health (hereinafter DOH) of a new method for Medicaid reimbursement to nursing homes called the "Long Term Care Case Mix Reimbursement System".[1] After a few months of experience with this system, DOH concluded that a downward adjustment of the rates was necessary to account for their purported artificial increase due to improved reporting of patient care, known as "paper optimization". Accordingly, it promulgated a regulation imposing an

---

1. This system is composed of four components: direct, indirect, noncomparable and capital costs (10 NYCRR 86-2.10 [b] [1] [ii]).

across-the-board 3.035% reduction, or "recalibration", in the direct component of the Medicaid reimbursement rate (10 NYCRR former 86-2.31 [a]). The implementation date for this regulation was July 1, 1987, retroactive to January 1, 1987 (10 NYCRR former 86-2.31 [b]).

Plaintiff, a nonprofit association of all 62 counties in New York, 42 of which own and operate nursing homes or residential health facilities, brought a CPLR article 78 proceeding in October 1987 challenging the regulation. Supreme Court converted the proceeding into a declaratory judgment action and subsequently declared the recalibration regulation null and void. Its judgment, entered May 1, 1989, directed DOH "to recompute the Medicaid reimbursement rate in effect from January 1, 1987 onward for each county nursing home without reference to, or utilization of, the recalibration regulation." On appeal, we reversed on the ground, *inter alia*, that the proceeding was barred by the four-month Statute of Limitations *(New York State Assn. of Counties v Axelrod*, 156 AD2d 14, 17). The Court of Appeals reversed and, on June 27, 1991, reinstated Supreme Court's judgment *(New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 177). DOH then recalculated the 1987 and 1988 reimbursement rates for the nursing homes of plaintiff's members without any recalibration adjustment and paid the withheld recalibration moneys to the nursing homes in September 1991.[2] For the 1989, 1990 and 1991 rate years, DOH promulgated a new recalibration methodology providing for a recalibration rate of between 0% and 3.035% based on facility-specific factors rather than State-wide average data (10 NYCRR 86-2.31 [a]).

Plaintiff responded by moving by order to show cause to enforce the reinstated judgment and to restrain DOH from retroactively applying the new recalibration regulation. Supreme Court granted the motion and in an order entered April 10, 1992 directed DOH, *inter alia*, to recalculate the county nursing home rates for the years 1989 through 1991 "so as to include an additional 3.035 percent in the direct component in said rates" and to pay the moneys due within 45 days. By memorandum and order entered March 18, 1993, we affirmed *(New York State Assn. of Counties v Axelrod*, 191 AD2d 932). On March 26, 1993, DOH served a notice of intention to seek leave to appeal to the Court of Appeals and ultimately moved for such relief, which motion was dismissed

---

2. This sum totalled $10,435,294.

on July 1, 1993 *(New York State Assn. of Counties v Axelrod,* 82 NY2d 705). DOH then submitted a motion for leave to appeal to this Court which we denied on August 11, 1993. At that point, DOH recalculated the nursing homes' 1989 through 1991 rates without any recalibration adjustment and issued payment ($13,498,376) to them in late September 1993.

On August 30, 1993, plaintiff brought on this contempt application wherein it also sought an award of postdecision and postjudgment interest along with an injunction restraining DOH from imposing the gross receipts assessment set forth in Public Health Law § 2807-d on the reimbursement moneys the nursing homes received for the 1989 through 1991 rate years. Supreme Court found DOH in civil contempt for failing to comply with its May 1989 judgment and April 1992 order, levied a fine of $13,498,876 and restrained DOH from withholding any moneys pursuant to Public Health Law § 2807-d, but denied plaintiff's request for interest. On reargument, Supreme Court, pursuant to CPLR 5002 and 5003, awarded plaintiff postdecision and postjudgment interest amounting to $6,797,730. These appeals ensued.

■ The first issue we confront is whether DOH was properly found to be in civil contempt. To sustain a civil contempt, it must be shown, *inter alia,* that a lawful judicial order expressing an unequivocal mandate was in effect and was disobeyed *(see, McCain v Dinkins,* 84 NY2d 216, 226). Applying this standard, an order of contempt was not warranted where the order that was allegedly disobeyed was ambiguous or did not specifically direct or prohibit the performance of a certain act *(see, Lubitz v Mehlman,* 187 AD2d 97, 103, *lv dismissed* 82 NY2d 705; *Matter of Korn v Gulotta,* 186 AD2d 195, 197, *lv dismissed* 81 NY2d 759; *Town of Virgil v Ford,* 184 AD2d 901, 903). Here, Supreme Court's May 1989 judgment did not dictate a specific methodology to be used upon the recomputation of the reimbursement rates *(see, Matter of Jewish Home & Infirmary v Commissioner of N. Y. State Dept. of Health,* 84 NY2d 252, 269 [Levine, J., dissenting]). Moreover, at the time of Supreme Court's judgment, when a rate determination was judicially annulled, case law indicated that, upon remittal, it was within DOH's discretion to determine the proper reimbursement rate *(see, Matter of Cabrini Med. Ctr. v Axelrod,* 177 AD2d 824, 825, *lv denied* 79 NY2d 755; *Matter of Brookdale Hosp. Med. Ctr. v Axelrod,* 120 AD2d 144, 148). Therefore, for these reasons and as it was not settled until recently that DOH lacked the authority to apply the new recalibration

regulation retroactively to the 1989 through 1991 rate years *(see, Matter of Jewish Home & Infirmary v Commissioner of N. Y. State Dept. of Health, supra,* at 265), we find that an order of contempt cannot be predicated upon Supreme Court's May 1989 judgment.

■ Indisputably, Supreme Court's April 10, 1992 order expresses an unequivocal mandate; however, it is equally clear that its enforcement was stayed until March 24, 1993 by reason of DOH's appeal to this Court *(see,* CPLR 5519 [a] [1]; [e]). The critical question is whether it was stayed beyond that date. Plaintiff maintains that it was not because DOH did not file its notice of intention to seek leave to appeal until March 26, 1993, two days beyond the five-day period provided for in CPLR 5519 (e).

In our view, the only effect of DOH's delay was that the automatic stay lapsed for two days before being reinstated under CPLR 5519 (a) (1) when the notice of intention was filed *(see, Matter of Willoughby Nursing Home v Axelrod,* 113 AD2d 617, 620). Inasmuch as the stay, once reinstated, continued until we denied DOH's motion for leave to appeal in August 1993, and as DOH was not obligated to comply with the order during the two-day period the automatic stay had lapsed, it cannot be found to have disobeyed the order.

For the foregoing reasons, and as the record shows that DOH complied with the April 10, 1992 order within 45 days of the termination of the appellate process, we shall reverse the contempt citation against it which necessarily negates the fine imposed by Supreme Court.

■ We also reverse Supreme Court's award of interest in light of our consistent holdings that there is no statutory authority, express or implied, for such an award under these circumstances *(see, Matter of New York State Health Facilities Assn. v Axelrod,* 199 AD2d 752, 754, *revd on other grounds* 85 NY2d 326, 332; *Matter of Trustees of Masonic Hall & Asylum Fund v Commissioner of N. Y. State Dept. of Health,* 193 AD2d 249, *appeal dismissed* 83 NY2d 802; *Demisay v Whalen,* 84 AD2d 902). On this point, we note that while the Federal regulation requires the payment of providers' claims within 12 months, it further states that this time limitation does not apply to payments made in accordance with a court order, which it states can be made at any time (42 CFR 447.45 [d] [4] [iv]). Had the payment of interest been contemplated under such circumstances, it can be presumed the regulation would

have so provided *(see, Matter of National Farmers Org. v Gerace,* 66 NY2d 719, 722).

■ In 1992 the Legislature enacted Public Health Law § 2807-d (2) (b) (i), which provides for an assessment of 0.6% on each residential health care facility's gross receipts received for all patient care services and other operating income on a cash basis beginning January 1, 1991. An additional assessment of 1.2% is imposed on a facility's gross receipts received after April 1, 1992 (Public Health Law § 2807-d [2] [b] [ii]). Because these assessments will apply to the withheld reimbursement moneys paid in 1993 to the nursing homes for services rendered prior to the effective date of the statute, plaintiff maintains the assessments should not be imposed as it would contravene the letter and spirit of the prospective reimbursement methodology embodied in the Public Health Law.

In resolving this issue, we are guided by the principle that when the language of a tax statute is unambiguous, it should be construed so as to give effect to the plain meaning of the words used *(see, Matter of 1605 Book Ctr. v Tax Appeals Tribunal,* 83 NY2d 240, 244, *cert denied* — US —, 115 S Ct 61). Further, when a statute includes exceptions, as Public Health Law § 2807-d does, it is the general rule that those exceptions mentioned exclude those not mentioned *(see,* McKinney's Cons Law of NY, Book 1, Statutes § 240, at 412-413).

Given the fact that under the cash basis method of accounting income is reported when moneys are actually or constructively received, rather than earned (33A Am Jur 2d, Federal Taxation, ¶ 6150, at 201), it can be presumed that the Legislature was cognizant of the fact the gross receipts assessment would apply to payments for services rendered prior to the effective date of the statute. Had it viewed this circumstance to be in conflict with the policy prohibiting retroactive rate adjustments expressed in Public Health Law § 2807 (7) (a), it can be further presumed that it would have excluded such payments from the reach of the assessment. Since it did not, and as Public Health Law § 2807-d clearly makes the reimbursement moneys received after January 1, 1991 and or April 1, 1992 subject to the gross receipts assessment, Supreme Court erred in restraining DOH from collecting the subject assessment. We further find that the imposition of the assessment on the reimbursement moneys will not violate plaintiff's due process rights *(see, United States v Carlton,* 512 US —, —, 114 S Ct 2018, 2021).

CARDONA, P. J., MERCURE, PETERS and SPAIN, JJ., concur.

Ordered that the order entered January 20, 1994 is modified, on the law, without costs, by reversing the contempt determination, the imposition of the fine and the restraint preventing the collection of the gross receipts assessment pursuant to Public Health Law § 2807-d, and, as so modified, affirmed.

Ordered that the order entered August 9, 1994 is reversed, on the law, without costs.