■ In the Matter of RYE PSYCHIATRIC HOSPITAL CENTER, INC., Appellant-Respondent, v RICHARD C. SURLES, as Commissioner of the Office of Mental Health of the State of New York, et al., Respondents-Appellants. [630 NYS2d 593] —White, J. Cross appeals from a judgment of the Supreme Court (Kahn, J.), entered November 5, 1993 in Albany County, which partially dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, seeking, *inter alia*, Medicaid relief based on petitioner's status as a disproportionate share hospital.

Petitioner is a private psychiatric hospital located in the City of Rye, Westchester County, which participates in the Federal/State Medicaid program (42 USC § 1396 *et seq.*). To qualify for Federal reimbursement, a State must submit to the Secretary of the Department of Health and Human Services (hereinafter Department) for approval a plan which, *inter alia*, establishes a method for reimbursing health care providers (42 USC § 1396a [b]). Under the Boren Amendment, the State plan must provide for the payment of hospital services through the use of rates which the State finds, and make assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities (42 USC § 1396a [a] [13] [A]). In formulating its plan, the State must take into account, *inter alia*, the situation of hospitals which serve a disproportionate number of low-income patients with special needs by providing an appropriate increase, known as a disproportionate share adjustment, in the rate paid to disproportionate share hospitals for inpatient hospital services provided to low-income patients (42 USC § 1396a [a] [13] [A]; § 1396r-4 [a] [1] [B]).

In response to the Boren Amendment, the State Office of Mental Health, the agency responsible for setting the reimbursement rates for private psychiatric hospitals, adopted a reimbursement schedule that included a "minimum utilization adjustment" (14 NYCRR former 577.7 [g]). The effect of this adjustment was to decrease the per diem reimbursement rate for hospitals operating at less than 75 percent capacity. Petitioner successfully challenged this adjustment in a Federal court action (*see, Rye Psychiatric Hosp. Ctr. v Surles*, 768 F Supp 82, 89).

Thereafter, petitioner commenced this CPLR article 78 proceeding seeking a judgment directing respondents to discontinue the use of the minimum utilization adjustment and to recalculate its rates to include a disproportionate share adjustment. Ultimately, petitioner secured a judgment in August 1992, directing respondents to recalculate its rate for the 1986 through 1991 rate years without the use of the minimum utilization adjustment. The issue of petitioner's entitlement to a disproportionate share adjustment was referred for a hearing, following which Supreme Court found that petitioner was not entitled to a disproportionate share adjustment but was entitled to interest on the reimbursement due it as the result of the recalculation of its 1986 through 1991 rates. These cross appeals ensued.

A "special rule" permits a State Medicaid plan to be considered in conformance with the Boren Amendment if payment adjustments for disproportionate share hospitals were provided to a majority of hospitals as of January 1, 1984 and if the aggregate amount of such payments is not less than would be required under the Boren Amendment (42 USC § 1396r-4 [e] [1] [A] [i], [ii]). At the hearing, respondents established that the Department approved its request for an exemption from the Boren Amendment's disproportionate share adjustment requirement based upon respondents' assurance that payment of allowances to hospitals from the State's bad debt and charity pools met the requirements of the "special rule". The effect of this approval is that respondents do not have to include a disproportionate share adjustment in the rate paid to disproportionate share hospitals.

Petitioner contends that Supreme Court erred in concluding that the State met the requirements of the "special rule" since respondents offered no proof on this issue. This contention lacks merit since petitioner had the burden of proof on the issue of compliance with the Medicaid laws (*see, Multicare Medical Ctr. v Washington*, 768 F Supp 1349, 1389). We further note that, unlike the Boren Amendment, there is no language in 42 USC § 1396r-4 (e) requiring a State to make findings supporting its request for an exemption under the "special rule" (*compare, Wilder v Virginia Hosp. Assn.*, 496 US 498, 505-509). Moreover, a State's request under the "special rule" does not implicate the Boren Amendment's requirement for findings since such request does not involve a change in payment method or standards (*see*, 42 CFR 447.253 [b]). Therefore, for these reasons and as it is presumed that respondents acted in accordance with the law (*see*, Richardson, Evidence § 72, at 49

[Prince 10th ed]; Fisch, NY Evidence § 1134, at 649 [2d ed]), we conclude that Supreme Court's finding that the State has an exemption under the "special rule" from the Boren Amendment's disproportionate share adjustment requirement is correct.

It is undisputed that allowances from the State's bad debt and charity pools are made to major public hospitals, as well as voluntary and private proprietary hospitals, but are not made to private psychiatric hospitals. Petitioner maintains that this violates its equal protection rights.

A classification will survive an equal protection challenge so long as it is based upon some ground of difference having a fair and substantial relation to a reasonable and identifiable governmental objective (*see, Greenstein v Bane*, 833 F Supp 1054, 1075). Also, government regulation in the area of economics and social welfare "carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality" (*Hodel v Indiana*, 452 US 314, 331-332).

The purpose for providing allowances to general hospitals from the bad debt and charity pools is to cushion the financial losses they sustain from bad debts and the costs of charity care (*see*, Public Health Law § 2807-c [14] [b]). Inasmuch as the record evidence shows that private psychiatric hospitals have a relatively low percentage of uncompensated care patients and are profitable enterprises, and as petitioner offered no proof on this issue, we find that there is a rational basis for excluding private psychiatric hospitals from receiving allowances from the subject pools. Thus, we reject petitioner's equal protection argument.

We shall reverse Supreme Court's award of interest in light of our consistent holdings that there is no statutory authority, express or implied, for such an award under these circumstances (*see, Matter of New York State Health Facilities v Axelrod*, 199 AD2d 752, 754, *revd on other grounds* 85 NY2d 326, 332; *Matter of Trustees of Masonic Hall & Asylum Fund v Commissioner of New York State Dept. of Health*, 193 AD2d 249, *appeal dismissed* 83 NY2d 802; *Demisay v Whalen*, 84 AD2d 902). On this point, we note that while the Federal regulation requires the payment of providers' claims within 12 months, it further states that this time limitation does not apply to payments made in accordance with a court order, which it states can be made at any time (42 CFR 447.45 [d] [4] [iv]). Had the payment of interest been contemplated under such circumstances, it can be presumed that the regulation would have so

provided (*see, Matter of National Farmers Org. v Gerace*, 66 NY2d 719, 722).

Cardona, P. J., Mercure, Peters and Spain, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded interest, and, as so modified, affirmed.