[719 NYS2d 182]

In the Matter of NEWCHANNELS CORPORATION et al., Petitioners, v TAX APPEALS TRIBUNAL OF THE DEPARTMENT OF TAXATION AND FINANCE OF THE STATE OF NEW YORK et al., Respondents.

Third Department, January 11, 2001

APPEARANCES OF COUNSEL

*Morrison & Foerster,* New York City (*Paul H. Frankel* of counsel), for petitioners.

*Eliot Spitzer, Attorney General,* Albany (*Andrew D. Bing* of counsel), for respondents.

### OPINION OF THE COURT

CREW III, J.

The facts in this proceeding are largely undisputed. During the years in issue, 1989 through 1992, petitioners[1] functioned as "cable operators." In that capacity, petitioners collected television signals by various means (off-the-air broadcast, microwave and external satellite signals), clarified the signals, assigned them a channel frequency and transmitted the signals to subscribers through a system of coaxial cables and amplifiers. Petitioners had no control over the content of the signal received; all they could do was "get rid of the ghosts" and make the signal stronger. Petitioners' largest capital investments consisted of their respective cable plants, together with the cables, amplifiers and other equipment necessary to receive and transmit signals to their customers, and substantially all of petitioners' revenue was derived from subscriber fees.

To that end, petitioners offered three levels of service to their subscribers: "broadcast basic," consisting mainly of channels they were required to transmit under the Federal Communication Commission's "must carry" rules (i.e., local broadcast stations, public, educational and government access stations, and the local public television station);[2] "basic service," consisting of cable television programming such as CNN and USA Network; and "premium programming," including HBO and the Disney Channel. Petitioners, in turn, paid licensing and copyright fees to the "cable programmers," i.e., the entities that actually produced the programming provided by cable operators to subscribers, in exchange for being able to carry and transmit such signals. During the relevant time period, such payments comprised approximately 35% of petitioners'

---

**1.** Petitioner Upstate Community Antenna, Inc. and petitioner NewChannels Corporation are affiliates, with Upstate operating as a division of NewChannels.

**2.** Another aspect of the "must carry" rules included providing "local origination programming," which required petitioners to provide coverage of meetings and events of interest to local residents, e.g., local athletic competitions, parades, town board meetings and the like. Such programming, provided as a service to the community, did not generate any revenue.

overall expenditures. As noted previously, petitioners had no control over the content of the signal received, nor could they dictate the times at which the programs would be shown or sell advertising on the local or premium channels they offered.

Insofar as is relevant to this proceeding, and during the relevant time periods, petitioner NewChannels Corporation and petitioner Upstate Community Antenna, Inc. filed corporation tax returns as "transmission" corporations under Tax Law article 9. Following an audit, the Audit Division of the Department of Taxation and Finance concluded that petitioners should have filed their respective returns as general business corporations under Tax Law article 9-A instead. Notices of deficiency then were issued to NewChannels in the amount of $4,216,307 (for fiscal years 1989, 1990 and 1991) and $2,928,599 (for fiscal year 1992), plus interest, and to Upstate in the amount of $299,536, plus interest. Following a conciliation conference, NewChannels' tax liability was reduced to $4,163,994, plus interest, and Upstate's tax liability was reduced to $291,150, plus interest. No penalties were assessed against petitioners.

Petitioners thereafter filed separate petitions seeking a redetermination of the respective deficiencies. Following a consolidated hearing, an Administrative Law Judge sustained the notices of deficiency. Petitioners filed exceptions to such ruling, which respondent Tax Appeals Tribunal denied, finding that petitioners were not principally engaged in the conduct of a transmission business within the meaning of Tax Law §§ 183 and 184. Petitioners thereafter commenced this proceeding in this Court seeking to annul the Tribunal's determination.

The sole issue before the Tribunal was whether, during the relevant time period, petitioners were principally engaged in the conduct of a transmission business within the meaning of Tax Law §§ 183 and 184. These statutes, *inter alia*, impose a franchise tax upon every domestic corporation "principally engaged in the conduct of a transportation or transmission business" (Tax Law § 183 [1] [b]; § 184 [1]).[3] "Transmission business" is not defined by statute, regulation or case law, and resolution of this dispute turns upon the construction given to that phrase.

---

3. Cable television is not one of the businesses enumerated in Tax Law § 183 because it did not exist when the current version of the statute was enacted in 1930 (*see*, L 1930, ch 663, § 2) or when the statute was amended in 1935 (*see*, L 1935, ch 745, §§ 3, 4).

"Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for the administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld [citations omitted]" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459; *see, Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166, 173; *Matter of Clinton Hill Equities Group v Tax Appeals Tribunal*, 240 AD2d 992, 993, *lv denied* 90 NY2d 808). "Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its [interpretation is] therefore to be accorded much less weight" (*Kurcsics v Merchants Mut. Ins. Co.*, *supra*, at 459). Where the language of a tax statute is unambiguous, it should be construed in such a manner as to give effect to the plain meaning of the words employed therein (*see, New York State Assn. of Counties v Axelrod*, 213 AD2d 18, 24, *lv dismissed* 87 NY2d 918). Although the parties debate whether deference should be afforded to the Tribunal's interpretation of the relevant provisions of Tax Law §§ 183 and 184, that issue need not detain us for we are persuaded, for the reasons that follow, that the interpretation adopted by the Tribunal is utterly irrational and, as such, must be annulled.

In denying petitioners' exceptions, the Tribunal acknowledged that petitioners indeed were cable operators in that they transmitted broadcast and cable programs to their subscribers. "Transmit" is "to send a signal by wire, radio, or television waves," and "transmission" is the "act or process of transmitting" or "something that is transmitted" (Random House Dictionary of English Language 2011 [unabridged 2d ed 1987]). Affording these terms their plain and ordinary meaning (*see, New York State Assn. of Counties v Axelrod*, *supra*) and reviewing the extensive testimony regarding the nature of petitioners' operations leaves no doubt that petitioners are in fact engaged in a "transmission business."

The primary basis for the Tribunal's conclusion that petitioners were not *"principally engaged* in the conduct of a * * * transmission business" (Tax Law § 183 [1] [b]; § 184 [1] [emphasis supplied]) stemmed from its belief that, viewed from the perspective of petitioners' customers (citing *Matter of*

*Capitol Cablevision Sys.*, Tax Appeals Tribunal, TSB-D-88 [3], NY St Tax Rep [CCH] P252-105, June 9, 1988), the focus of cable television service was "not the transmission of various signals but the provision of entertainment." Stated another way, the Tribunal was of the view that "transmission [was] merely the means by which petitioners convey[ed] their product to their customers, [it was] not their business." Even accepting the Tribunal's premise that "entertainment" was the product or service furnished to and purchased by petitioners' subscribers (and we note that the bulk of the testimony at the administrative hearing was to the contrary),[4] the Tribunal's conclusion that the transmission of cable services was merely incidental to petitioners' business is irrational and completely unsupported by the record.

Aside from the testimony regarding the primary function of cable operators such as petitioners (*see*, n 4, *supra*), the record makes plain that petitioners have an extremely limited capacity to manipulate the signals they capture from cable programmers and transmit to their subscribers. As noted previously, although petitioners can and do package signals for their subscribers, petitioners have no control over the content of the signal received; they may "get rid of the ghosts" or clarify the signal and amplify it, but they cannot dictate when or how many times a particular program will be broadcast, nor can they sell advertising on the local or premium channels they offer. With the exception of the local origination programming that petitioners are required to carry, petitioners offer no original programming. Hence, petitioners' competitors are other cable operators, such as TimeWarner Cable, not cable programmers such as HBO. The record reflects that petitioners' single largest capital investment consists of their respective cable plants, together with the cables, headends, amplifiers, antennae, converters and other equipment necessary to transmit signals to their subscribers. Most of petitioners' income is derived from subscriber fees, and the major part of their expenses lies in the maintenance of their physical plants and the trunk, feeder and drop cables used to carry signals to the homes of their subscribers.

In light of such record evidence, we are of the view that the Tribunal's conclusion that transmission is merely the means

---

4. Although one of petitioners' witnesses indeed testified that a cable subscriber's "ultimate motivation is * * * to be entertained," the record is replete with testimony that the main function of a cable operator was to provide to a subscriber precisely what he or she could not obtain without the cable operator—namely, a clear, viewable signal.

by which petitioners convey their product to their subscribers and is therefore incidental to petitioners' actual business of providing entertainment is entirely irrational. Indeed, the only conclusion that the record before us permits is precisely the opposite—namely, that the provision of entertainment is merely incidental to petitioners' demonstrated function as cable operators, to wit, transmitting a clear, viewable signal.

To the extent that the Tribunal relied upon its prior decision in *Matter of Capitol Cablevision Sys.* (Tax Appeals Tribunal, TSB-D-88 [3], NY St Tax Rep [CCH] P252-105, June 9, 1988, *supra*) and principles of stare decisis in reaching its determination, we find this to be an insufficient basis upon which to sustain the subject notices of deficiency. In *Matter of Capitol Cablevision Sys.* (*supra*), the Tribunal held, based upon the record before it, that:

> "[the] petitioner's business is selling television entertainment to its subscribers by packaging television signals which in its judgment represent the best blend of channels and subject matter to achieve its goal of attracting and keeping subscribers. [The p]etitioner originates programming towards this same goal. Transmission is merely the means by which the petitioner conveys its product to its customers, it is not the petitioner's business."

Following such decision, the Tribunal adopted a policy of taxing cable television companies under Tax Law article 9-A and, upon reviewing petitioners' exceptions to the Administrative Law Judge's ruling, held that the doctrine of stare decisis and public policy considerations mandated the same result here. We cannot agree.

The rule of stare decisis "obtains unless there are compelling reasons to alter the established rule" (*Matter of Schulz v State of New York*, 241 AD2d 806, 808, *appeal dismissed* 90 NY2d 1007). Whatever record evidence may have been before the Tribunal in *Matter of Capitol Cablevision Sys.* (*supra*), the record before this Court in the instant proceeding simply does not permit a finding that petitioners are engaged in the business of selling television entertainment. Stated another way, the rule of stare decisis may not be invoked to compel a result that is otherwise unreasonable, irrational and completely unsupported by the record. Given the testimony and other record evidence in this proceeding as to the nature of petitioners' business, the Tribunal's finding that petitioners are properly taxed as general business corporations under Tax Law article 9-A, as op-

posed to transmission corporations under Tax Law article 9, simply cannot stand. We have reviewed respondents' remaining arguments in support of the Tribunal's determination and find them to be lacking in merit.

CARDONA, P. J., MUGGLIN, ROSE and LAHTINEN, JJ., concur.

Adjudged that the determination is annulled, on the law, without costs, petition granted and matter remitted to respondents for further proceedings not inconsistent with this Court's decision.