[935 NYS2d 357]

SIGNATURE HEALTH CENTER, LLC, Appellant, v STATE OF NEW
YORK, Respondent.

Third Department, December 15, 2011

**APPEARANCES OF COUNSEL**

*Baker, Sanders, Barshay, Grossman, Fass & Muhlstock*, Garden City (*Craig B. Sanders* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Victor Paladino* of counsel), for respondent.

**OPINION OF THE COURT**

PETERS, J.P.

In 1999, claimant was approved by the Department of Health (hereinafter DOH) to operate as a licensed diagnostic and treatment center and thereafter provided services to Medicaid recipients under defendant's Medicaid program. As a newly approved provider without cost experience, claimant initially received a "budgeted" rate of reimbursement per threshold patient visit based on its projected costs. Pursuant to DOH regulations, this rate was subject to a retroactive adjustment based upon actual costs incurred during the first full fiscal year of operation (*see* 10 NYCRR 86-4.19 [b]). In 2001, claimant submitted a cost report to DOH for the 2000 calendar year and sought an adjustment of its rate. After the cost report was reviewed, endorsed and approved by DOH, a new threshold rate was calculated, which was approximately $35 per threshold visit higher than the initial budgeted rate. This new rate was then certified by the Division of Budget in December 2001. In May 2002, claimant sought a further rate adjustment based upon a revised cost report for 2000, which was thereafter approved by DOH and certified by the Division of Budget in December 2002. However, DOH did not publish the revised rates and refused to reimburse claimant in accordance with them.

Claimant thereafter commenced a CPLR article 78 proceeding seeking to compel DOH to publish the revised reimbursement rates and to release the payments owed to it. Supreme Court (Sheridan, J.) found that, inasmuch as the new rates had been approved and certified, the posting of such rates was a ministerial act required to be performed by law. Upon the court's order that DOH publish the revised reimbursement rates and make

all payments due to claimant in accordance with those rates, DOH paid approximately $3 million in retroactive reimbursement.

Claimant then commenced this action against defendant seeking consequential damages, including lost profits, arising from defendant's delay in publishing and paying the revised reimbursement rates. The Court of Claims granted claimant's motion for summary judgment on the issue of liability, finding that the judgment in the CPLR article 78 proceeding collaterally estopped defendant from relitigating the issue of ministerial negligence (*see Signature Health Ctr., LLC v State of New York*, 23 Misc 3d 1103[A], 2009 NY Slip Op 50559[U] [2009]). Following a trial on damages, the court directed the parties to brief the impact of the Court of Appeals' recent decisions in *McLean v City of New York* (12 NY3d 194 [2009]) and *Dinardo v City of New York* (13 NY3d 872 [2009]), which clarified and arguably changed the law with respect to governmental immunity for ministerial and discretionary actions. Finding that the law as set forth in *McLean* and *Dinardo* differed from that which it applied in previously deciding the issue of liability, the Court of Claims reexamined the issue of liability in light of those decisions and concluded that defendant could not be liable for failure to perform a ministerial action unless it owed a special duty to claimant and that, under these circumstances, a special duty existed because Public Health Law § 2807 implicitly created a private cause of action for the benefit of Medicaid treatment providers. On the issue of damages, however, the court found that claimant failed to prove that its alleged lost profits resulted directly from the delayed reimbursement, and denied the additional claims for consequential damages based upon a failure of proof. Claimant appeals.*

Initially, we note that defendant was not aggrieved by the dismissal of the complaint and, therefore, had no right to file a cross appeal (*see Parochial Bus Sys. v Board of Educ. January 11, 2012 of City of N.Y.*, 60 NY2d 539, 544 [1983]). However, given the adverse finding by the Court of Claims concerning liability, defendant is entitled to raise that issue as an alternative ground for affirmance (*see id.* at 545; *Matter of Save the Pine*

---

* Although claimant's notice of appeal is from the Court of Claims' May 20, 2010 decision rather than the judgment entered on June 9, 2010, this Court will, in the interest of justice, treat the premature notice of appeal as valid and address the merits (*see* CPLR 5520 [c]; *Levine v New York State Thruway Auth.*, 52 AD3d 975, 976 [2008]).

*Bush v Zoning Bd. of Appeals of Town of Guilderland*, 220 AD2d 90, 94 [1996], *lv denied* 88 NY2d 815 [1996]; *Panetta v Tonetti*, 182 AD2d 977, 978 [1992], *lv denied* 80 NY2d 756 [1992]; *see also* CPLR 5501 [a] [1]). Accordingly, we begin by addressing the question of whether there exists a special duty between defendant and claimant by virtue of Public Health Law § 2807, such that defendant may be subject to liability for its improper withholding of Medicaid reimbursement payments.

"Government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general" (*McLean v City of New York*, 12 NY3d at 203). A special relationship is formed

> " '(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation' " (*id.* at 199, quoting *Pelaez v Seide*, 2 NY3d 186, 199-200 [2004]; *see Garrett v Holiday Inns*, 58 NY2d 253, 261-262 [1983]; *Lewis v State of New York*, 68 AD3d 1513, 1514 [2009]).

Here, claimant relied only on the first of these categories, claiming that Public Health Law § 2807, which governs reimbursement of Medicaid expenses incurred by participating providers, creates a statutory duty for the benefit of the class of which it is a member.

"To form a special relationship through breach of a statutory duty, the governing statute must authorize a private right of action" (*Pelaez v Seide*, 2 NY3d at 200; *accord McLean v City of New York*, 12 NY3d at 203). Since Public Health Law § 2807 does not expressly confer upon Medicaid providers such as claimant the right to seek civil damages for a violation of its provisions, recovery may be had only if a private right of action can be implied.

> " 'One may be fairly implied when (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be

consistent with the legislative scheme' " (*McLean v City of New York*, 12 NY3d at 200, quoting *Pelaez v Seide*, 2 NY3d at 200; *see City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616, 627 [2009]; *Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]).

"If one of these prerequisites is lacking, the claim will fail" (*Pelaez v Seide*, 2 NY3d at 200).

Here, while there can be little doubt that Medicaid providers, such as claimant, are a class for whose benefit the reimbursement provisions of Public Health Law § 2807 was enacted (*cf. Wilder v Virginia Hospital Assn.*, 496 US 498, 510 [1990]), we find that permitting a private action for consequential damages would not promote the legislative purpose of that statutory provision and would be inconsistent with the overall legislative scheme.

Public Health Law § 2807, which governs the reimbursement rate at which a facility can bill Medicaid for eligible residents, was enacted to implement a Medicaid reimbursement system in compliance with the requirements of title XIX of the Social Security Act (42 USC § 1396 *et seq.*). In response to skyrocketing medical costs that were consuming taxpayer funds at an alarming rate, the Legislature amended this statute in 1969 by what is known as the Hospital Cost Control Law (*see* L 1969, ch 957). Through that amendment, the Legislature altered the criteria for establishing the rates of reimbursement for various medical services from rates "reasonably related to the costs of providing such service" (Public Health Law former § 2807 [3], as added by L 1965, ch 795, § 1) to rates "reasonably related to the costs of efficient production of such service" (Public Health Law former § 2807 [3], as amended by L 1969, ch 957, § 4; *see People v Woman's Christian Assn. of Jamestown*, 56 AD2d 101, 103 [1977]). In altering such criteria, the Legislature expressly declared "that it is essential that an effective cost control program be established which will both enable and motivate hospitals to control their spiraling costs" (L 1969, ch 957, § 2; *see generally People v Woman's Christian Assn. of Jamestown*, 44 NY2d 466, 471 [1978]).

The operative language of Public Health Law § 2807 (3) was again amended by the Legislature in 1982 (L 1982, ch 536, § 3), and currently requires the Commissioner of Health to establish reimbursement rates for payments to hospitals for hospital and health-related services that are "reasonable and adequate to

meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3]). In seeking to produce rates that comply with this standard, the Commissioner developed and implemented the Resource Utilization Group-II case mix reimbursement methodology, effective January 1, 1986 (*see generally* 10 NYCRR subpart 86-2; *Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581 [2005]). As the Court of Appeals has noted, this reimbursement methodology—designed to comport with the standard set forth in Public Health Law § 2807 (3)—represented "a key cost containment device that encourages facilities to economize," and replaced a prior methodology which—inconsistent with the purpose of the standard set forth in Public Health Law § 2807 (3)—"saddled taxpayers with ever-increasing expenditures without creating any incentives for efficiency" (*Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 544 [2006]). Indeed, Public Health Law § 2807 (3) "does not require rates to cover every [provider's] actual costs . . . Rates are 'reasonable and adequate' so long as they reimburse the necessary costs (i.e., the 'costs which must be incurred') of 'efficiently and economically operated facilities' " (*Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d at 546, quoting Public Health Law § 2807 [3]).

This strong concern for efficiency makes unmistakably clear that the legislative intent was to control the spiraling cost of Medicaid services that were consuming taxpayer dollars at an alarming rate. To permit Medicaid providers to bring a private right of action for recovery of consequential damages—including lost profits—against defendant for its negligent failure to provide reimbursement would therefore contravene the key cost containment purposes of the statute (*see Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207, 213 [1990]).

Furthermore, in our view, the Legislature incorporated a regulatory scheme that is sufficiently detailed so as to suggest that no private right of action was intended. Through those comprehensive provisions of the Public Health Law, the Legislature charged DOH with the responsibility for setting Medicaid reimbursement rates and, pursuant to that broad delegation of authority, DOH promulgated detailed regulations with respect to the rate-setting for hospitals and other Medicaid providers (*see* 10 NYCRR subpart 86-4 [reimbursement provisions for, among other facilities, "diagnostic and/or treatment

centers" such as claimant]; *see also* Public Health Law § 2807 [2] [b]). Pursuant to its delegation of authority, DOH also established an administrative process to challenge the reimbursement rates (*see* 10 NYCRR 86-4.16, 86-4.17). Moreover, the Legislature imposed certain standards and additional limitations on reimbursement, such as placing caps on administrative costs (*see* Public Health Law § 2807 [14]) and setting the trend factor to be used in calculating reimbursement rates (*see* Public Health Law § 2807-c [10] [c] [2]).

More significantly, there are firmly established, legislatively-created procedures in place for the review of reimbursement determinations made by DOH pursuant to Public Health Law § 2807. Health care providers receiving Medicaid reimbursement under Public Health Law § 2807 can bring a CPLR article 78 proceeding to challenge, for example, the rate-setting methodology implemented by DOH (*see Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health*, 85 NY2d 326 [1995]), the denial of an administrative rate appeal seeking increased reimbursement (*see Matter of County of Monroe v Kaladjian*, 83 NY2d 185 [1994]), or the adequacy of a provider's particular reimbursement rate (*see Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538 [2006]). Moreover, there is no dispute that Medicaid providers can obtain incidental monetary damages—as claimant did here—in the context of a CPLR article 78 proceeding challenging the withholding of Medicaid reimbursement payments (*see* CPLR 7806; *Matter of Gross v Perales*, 72 NY2d 231, 236-238 [1988]). Given that the Legislature has established procedures for judicial review of DOH's administrative rate-setting determinations and payment of reimbursement rates, it is fair to infer that had it intended to create a private right of action against governmental agencies, it would have specifically done so.

Finally, there is no authority in the Medicaid statutes, either express or implied, for the recovery of interest for delayed or wrongfully withheld reimbursement payments (*see Concourse Nursing Home v State of New York*, 1 AD3d 675, 677 [2003], *lv denied* 2 NY3d 704 [2004]; *Matter of Rye Psychiatric Hosp. Ctr. v Surles*, 218 AD2d 853, 855 [1995], *lv denied* 87 NY2d 803 [1995], *cert denied* 517 US 1233 [1996]; *New York State Assn. of Counties v Axelrod*, 213 AD2d 18, 23 [1995], *lv dismissed* 87 NY2d 918 [1996]; *Matter of Trustees of Masonic Hall & Asylum Fund v Commissioner of N.Y. State Dept. of Health*, 193 AD2d

249, 253-254 [1993], *appeal dismissed* 83 NY2d 802 [1994]; *Buffalo Columbus Hosp. v Axelrod,* 127 AD2d 987 [1987]). Clearly, having not permitted recovery of interest, the Legislature could not have intended to permit recovery of consequential damages based upon wrongfully withheld reimbursement payments. For all of these reasons, we find that a private right of action cannot be fairly implied from the reimbursement provisions of Public Health Law § 2807.

LAHTINEN, STEIN, MCCARTHY and GARRY, JJ., concur.

Ordered that the judgment is affirmed, without costs.