[600 NYS2d 174]

In the Matter of BROTHERS OF MERCY NURSING AND REHABILI-
TATION CENTER, Respondent, v COMMISSIONER OF THE NEW
YORK STATE DEPARTMENT OF HEALTH et al., Appellants.

Third Department, July 8, 1993

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General,* Albany *(Victor Paladino* and *Peter G. Crary* of counsel), for appellants.

*Cadwalader, Wickersham & Taft,* New York City *(William J. Natbony, Peter G. Bergmann* and *Jeffrey Q. Smith* of counsel), for respondent.

## OPINION OF THE COURT

CREW III, J.

Petitioner is a residential health care facility located in the

Town of Clarence, Erie County, and a participant in the Medicaid program; petitioner's Medicaid reimbursement rates are determined by the Department of Health (hereinafter DOH). In 1986, DOH instituted a new reimbursement methodology which determines a facility's per patient, per diem Medicaid rate based upon four cost components: direct, indirect, noncomparable and capital (see, 10 NYCRR 86-2.10 [b] [1] [ii]). The direct, indirect and noncomparable components comprise the facility's operating costs and are calculated by reference to the facility's reported costs for the base year 1983 trended to the present rate year (see, 10 NYCRR 86-2.10 [a] [7]; [b] [2]). The capital cost, or nonoperating cost, component is based upon costs reported two years prior to the relevant rate year and is not trended (see, 10 NYCRR 86-2.10 [g]). Thus, for rate year 1992, a facility's reimbursement rate would be calculated based upon operating costs for 1983, trended forward, and capital costs reported for 1990.

The dispute here centers upon the manner in which DOH treated petitioner's interest expense in formulating its over-all reimbursement rate. Under DOH regulations, "[n]ecessary interest on both current and capital indebtedness is an allowable cost for all residential health care facilities" (10 NYCRR 86-2.20 [a]); the regulations further provide, however, that except in instances not relevant here, "[i]nterest expense shall be reduced by investment income" (10 NYCRR 86-2.20 [c] [1]).[1] In calculating petitioner's Medicaid reimbursement rates for rate years 1986 through 1992, DOH utilized petitioner's actual 1983 investment income to offset its interest expense reported for each of the given rate years. Additionally, for rate years 1987 through 1992, petitioner's reimbursement rates were computed using the 1987 amendment to the regional direct input price adjustment factor (hereinafter the RDIPAF adjustment), which was promulgated to "neutralize[] the difference in wage and fringe benefit costs between and among the [State's 16 geographic] regions caused by differences in the

---

1. Prior to December 27, 1990, 10 NYCRR 86-2.20 (c) did not specify the base year to be used in determining the investment income offset, although DOH apparently elected to utilize the investment income reported by facilities for 1983. Effective December 27, 1990, the relevant regulation specifically authorized the use of investment income reported for fiscal year 1983 to reduce the interest expense claimed. Effective September 10, 1992, the regulation provided, inter alia, that for rate years commencing on or after January 1, 1994, interest expense would be reduced by investment income reported for the same year used to compute the facility's capital costs (see, 10 NYCRR 86-2.20 [c] [3]).

wage scale of each level of employee" (10 NYCRR 86-2.10 [c] [3] [i]).[2]

Following completion of the administrative appeal process, petitioner commenced this CPLR article 78 proceeding challenging, *inter alia,* the use of the offset methodology in calculating its 1986 through 1992 Medicaid reimbursement rates and the use of the RDIPAF adjustment in computing its 1987 through 1992 Medicaid reimbursement rates. Supreme Court, *inter alia,* granted the petition to the extent that respondents were directed to recompute petitioner's 1991 and 1992 Medicaid reimbursement rates by utilizing investment income earned in 1989 and 1990, respectively (i.e., the same base years used to calculate petitioner's capital costs for those rate years), and to recompute petitioner's 1992 reimbursement rate without utilizing the RDIPAF adjustment.[3] This appeal by respondents followed.

It is well settled that "an administrative regulation will be upheld only if it has a rational basis, and is not unreasonable, arbitrary or capricious" *(New York State Assn. of Counties v Axelrod,* 78 NY2d 158, 166). To that end, this Court is not

---

2. The RDIPAF adjustment has been challenged on both substantive and procedural grounds. In *Pinnacle Nursing Home v Axelrod* (928 F2d 1306), the Second Circuit concluded, *inter alia,* that the State had failed to comply with the Boren Amendment's requirement to provide the Federal Secretary of Health and Human Services with findings and assurances that the Medicaid rates imposed were "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards" (42 USC § 1396a [a] [13] [A]). Thus, the 1987 RDIPAF adjustment was declared to be "null and void until such time that proper findings [were] submitted and approved by [the Health Care Financing Administration]" (hereinafter HCFA) *(Pinnacle Nursing Home v Axelrod, supra,* at 1318). The State subsequently submitted such findings and, by letter dated May 26, 1993, HCFA approved the State's 1990 State plan amendment, incorporating the RDIPAF methodology, with an effective date of April 2, 1992. It appears that the State is contemplating further administrative review of HCFA's determination at the Federal level.

As to the substantive challenge, we note that at least one court has concluded that the RDIPAF adjustment is irrational *(see, Avon Nursing Home v Axelrod* (Sup Ct, Monroe County, Oct. 18, 1991, Calvaruso, J.). We have been advised that an appeal from that decision is presently pending in the Fourth Department.

3. Supreme Court concluded that petitioner's claims regarding the RDIPAF adjustment for rate years 1987 through 1991 were time barred, as were petitioner's claims regarding the use of 1983 investment income for rate years 1986 through 1990. Petitioner has not cross-appealed from that portion of Supreme Court's judgment.

limited to a "pro forma" review of the challenged regulation but, instead, may scrutinize the regulation to determine whether it is genuinely reasonable *(id.,* at 166). DOH rate-setting actions may be set aside "upon a compelling showing that the calculations from which [they] derived [are] unreasonable" *(Matter of Catholic Med. Ctr. v Department of Health,* 48 NY2d 967, 968; *see, Matter of Society of N. Y. Hosp. v Axelrod,* 70 NY2d 467, 473).

■ Here, respondents fail to articulate, and the record fails to disclose, any rational basis for utilizing petitioner's actual reported 1983 investment income to offset interest expense incurred in subsequent rate years. The regulations indicate that interest expense may be incurred either as an operating or a capital expense. As noted previously, operating costs are subject to a trend factor *(see,* 10 NYCRR 86-2.10 [a] [7], [8]; [b] [1], [2]) and capital costs are based upon costs reported two years prior to the relevant rate year *(see,* 10 NYCRR 86-2.10 [g]). Thus, DOH has established an offset methodology that attempts to reduce interest expense, which has been adjusted to one degree or another to more accurately reflect the actual costs incurred, by a fixed amount of investment income earned at a seemingly arbitrary point in time. We are unable to discern from the record before us how a facility's actual investment income earned in 1983 correlates with or bears a rational relationship to interest expense incurred by that same facility several years later. We therefore conclude that the offset methodology employed here is irrational and, accordingly, that petitioner is entitled to have its 1991 and 1992 Medicaid reimbursement rates recomputed utilizing investment income earned in 1989 and 1990, respectively. In light of this determination, we need not reach petitioner's remaining arguments on this point.

■ With respect to the RDIPAF adjustment, we are of the view that this adjustment is in fact rational. As we noted at the outset, the RDIPAF methodology was introduced in 1986 to neutralize the difference in wage and fringe benefit costs between and among the State's 16 geographic regions *(see,* 10 NYCRR 86-2.10 [c] [3] [i]). The record indicates that DOH subsequently discovered, however, that the methodology failed to recognize that certain facilities had legitimate reasons for incurring labor costs that were higher than those incurred by other facilities located within the same region; the RDIPAF adjustment was thus introduced to mitigate the impact of RDIPAF on those higher-cost facilities. Although petitioner

may well have received greater reimbursement for its labor costs under the original RDIPAF methodology, this alone does not render the adjustment irrational. Petitioner has no entitlement to a specific rate of reimbursement *(see, Matter of Rye Psychiatric Hosp. Ctr. v State of New York,* 177 AD2d 834, 835, *lv denied* 80 NY2d 751) and, further, the record indicates that while petitioner may be receiving less reimbursement under the RDIPAF adjustment, it is nevertheless being reimbursed for its labor costs at rates which closely approximate its own actual wage rates.

As to petitioner's assertion that the RDIPAF adjustment is null and void due to the failure to provide the requisite findings and assurances to the Federal Health Care Financing Administration (hereinafter HCFA), we note that such findings have now been submitted and the State's plan incorporating the RDIPAF methodology has been given an effective date of April 2, 1992 *(see,* n 2, *supra).* It appears from the submissions to this Court, however, that HCFA's determination in this regard is not final and that the State is contemplating further administrative review at the Federal level. In light of this ongoing review process, we deem it advisable to dismiss petitioner's procedural challenge to the RDIPAF adjustment without prejudice to commencing a new proceeding if, once the Federal review process has run its course, petitioner remains aggrieved by DOH's application of the adjustment. We have examined the parties' remaining contentions, including petitioner's assertion that respondents' actions violated its due process rights, and find them to be lacking in merit.

MIKOLL, J. P., YESAWICH JR. and LEVINE, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as declared the 1987 RDIPAF adjustment null and void, enjoined respondents from applying that adjustment to petitioner's 1992 Medicaid reimbursement rates and directed the recomputation of petitioner's 1992 Medicaid reimbursement rate without reference to said adjustment; petitioner's claim that the RDIPAF adjustment is null and void on procedural grounds is dismissed without prejudice; and, as so modified, affirmed.