■ In the Matter of BROTHERS OF MERCY NURSING AND RE-HABILITATION CENTER, Respondent, v BARBARA A. DeBUONO, as Commissioner of New York State Department of Health, et al., Appellants. [740 NYS2d 170] —Appeal from a judgment (denominated order) of Supreme Court, Erie County (Kane, J.), entered November 15, 2000, which granted the petition and, inter alia, annulled the determination of its Medicaid reimbursement rates for the years 1993 through 1997.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously reversed on the law without costs and the petition is dismissed.

Memorandum: Petitioner, a not-for-profit nursing facility, commenced this CPLR article 78 proceeding seeking to annul the determination of its Medicaid reimbursement rates for the years 1993 through 1997. Petitioner challenged a component of its rates known as the 1987 "Regional Input Price Adjustment Factor" (RIPAF), which involves the application of percentage "corridors" around previously established regional average wage rates. Petitioner asserted that the continued utilization of that "corridor" methodology during the rate years in question—after that methodology had been judicially invalidated by state and federal courts on federal statutory grounds—was illegal, lacked a rational basis, and deprived petitioner of equal protection and procedural due process.

Respondents appeal from a judgment annulling the 1993-1997 rates and the RIPAF incorporated therein, directing respondents to recalculate petitioner's rates for those years, and further directing them to pay petitioner the difference between the improperly and properly calculated reimbursements. In granting such relief, Supreme Court determined that respondents had never cured the deficiency identified by the United States Court of Appeals for the Second Circuit and New York Court of Appeals in their respective earlier decisions invalidating the RIPAF (*Pinnacle Nursing Home v Axelrod,* 928 F2d 1306, 1318; *Matter of Avon Nursing Home v Axelrod,* 83 NY2d 977, 983). The court did not reach petitioner's remaining contentions.

The court erred in determining that the RIPAF had never been approved by the Federal Health Care Financing Administration (HCFA). The record establishes that respondents made the requisite findings and gave the requisite assurances to HCFA, which at several junctures gave its approval to State plan amendments incorporating the "corridor" methodology now challenged by petitioner (*see, Hall v Sullivan,* 129 F3d 113 [unpublished op]; *Matter of Brothers of Mercy Nursing & Reha-*

*bilitation Ctr. v Commissioner of N.Y. State Dept. of Health,*
192 AD2d 50, 53 n 2, 55, *revd on other grounds sub nom. Matter of Avon Nursing Home v Axelrod, supra).*

We conclude that the RIPAF is not irrational and does not deprive petitioner of equal protection (*see, Matter of Brothers of Mercy Nursing & Rehabilitation Ctr. v Commissioner of N.Y. State Dept. of Health, supra* at 54-55; *see generally, New York State Assn. of Counties v Axelrod,* 78 NY2d 158, 166; *Matter of Society of N.Y. Hosp. v Axelrod,* 70 NY2d 467, 473; *Matter of Catholic Med. Ctr. of Brooklyn & Queens v Department of Health of State of N.Y.,* 48 NY2d 967, 968, *rearg denied* 49 NY2d 802, citing *Matter of Sigety v Ingraham,* 29 NY2d 110, 114). Respondents' rationale for implementing the "corridor" methodology was to mitigate certain inequities resulting from the former methodology, which was based on a strict regional average of facilities' wage and fringe benefits costs. We reject petitioner's contention that the RIPAF is incompatible with the RUG-II methodology, in particular, its general scheme of prospective rate-setting and its mechanisms for benefitting those facilities that manage to contain their costs. The underlying purposes of RUG-II are furthered, not frustrated, by a system of reimbursement that more accurately pegs the reimbursement rate to the facility's actual costs in the base year. We further reject petitioner's contention that the "corridor" methodology was improperly implemented by respondents without any "reasonable or measured period of empirical documentation, assessment and evaluation" (*New York State Assn. of Counties v Axelrod, supra* at 168). To the contrary, the record demonstrates that respondents conducted an extensive study and arrived at a reasoned decision to implement the new methodology. Various studies and reports by respondents and their consultants explained the old and proposed new methodology in detail. They specifically documented the negative impact of the old methodology on higher cost facilities, particularly including government-run facilities, as well as its generosity to lower-cost facilities such as petitioner. Further, respondents studied and documented the financial impact that the "corridor" methodology would have on various types of facilities, depending on whether they were government-run, proprietary, or voluntary; whether they were "freestanding" or "hospital-based"; and whether their costs were "above ceiling," within the "corridor," or "below base." Those studies documented that the revised methodology would not affect the total revenues available to the industry, but instead would distribute available reimbursement funds more equitably and more closely according to facilities' actual labor costs in the base year. Further,

those studies not only addressed the anticipated impact of the new methodology, but recounted actual experience within the industry under the RIPAF (i.e., in the years after it was initially implemented and before it was nullified by the courts for earlier rate years). In any event, we recognize that empiricism is but one avenue by which an administrative agency may arrive at a reasoned judgment (*see, Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health,* 85 NY2d 326, 332, citing *Matter of Catholic Med. Ctr. of Brooklyn & Queens v Department of Health of State of N.Y., supra* at 968-969).

With respect to petitioner's equal protection claim, we note that, under the rational relationship test, there is no requirement that the classification be shown to be narrowly or precisely tailored to achieve its objectives (*see, Golden v Clark,* 76 NY2d 618, 623-624). Further " 'equal protection does not require that all classifications be made with mathematical precision' " (*Cass v State of New York,* 58 NY2d 460, 464, *rearg denied* 60 NY2d 586, quoting *Matter of Tolub v Evans,* 58 NY2d 1, 8, *appeal dismissed* 460 US 1076; *see, Matter of Eastern N.Y. Youth Soccer Assn. v New York State Pub. High School Athletic Assn.,* 108 AD2d 39, 41, *affd* 67 NY2d 665). Moreover, the alleged underinclusiveness or overinclusiveness of the classification is not dispositive unless it cannot be said that the classification rationally furthers the posited State interest (*see, Burlington Northern R.R. Co. v Ford,* 504 US 648, 653; *New York City Tr. Auth. v Beazer,* 440 US 568, 592 n 39; *Wegman's Food Mkts. v State of New York,* 76 AD2d 95, 99-101).

Respondents did not deprive petitioner of procedural due process. "Administrative review is not necessary when the methodology itself or the promulgation of a regulation has been challenged" (*St. Joseph's Hosp. Health Ctr. v Department of Health of State of N.Y.,* 247 AD2d 136, 154, *lv denied* 93 NY2d 803; *see, Matter of Montefiore Med. Ctr. v Chassin,* 203 AD2d 685, 686, *lv denied* 84 NY2d 802; *Matter of Patterson SNF v Chassin,* 196 AD2d 155, 161, *appeal dismissed and lv denied* 83 NY2d 962). "[T]he availability of CPLR article 78 review to challenge the actual reallocation [of Medicaid funds] satisfies due process requirements" (*St. Joseph's Hosp. Health Ctr. v Department of Health of State of N.Y., supra* at 154, citing *Interboro Inst. v Foley,* 985 F2d 90, 93-94; *see also, Bronx-Lebanon Special Care Ctr. v DeBuono,* 269 AD2d 195, 196, *lv denied* 95 NY2d 752). Present—Pine, J.P., Wisner, Hurlbutt, Kehoe and Burns, JJ.