[858 NE2d 1131, 825 NYS2d 426]

In the Matter of NAZARETH HOME OF THE FRANCISCAN SISTERS et al., Appellants, v ANTONIA C. NOVELLO, M.D., as Commissioner of Health of State of New York, et al., Respondents.

Argued September 14, 2006; decided October 24, 2006

**POINTS OF COUNSEL**

*Harter, Secrest & Emery LLP,* Rochester (*Thomas G. Smith* and *Carol L. O'Keefe* of counsel), for appellants. I. The Depart-

ment of Health's methodology and the resulting 2004 Medicaid rates paid to homes in the Erie Region are irrational. (*New York State Assn. of Counties v Axelrod,* 78 NY2d 158; *Matter of Mount Sinai Med. Ctr. v Empire Blue Cross & Blue Shield,* 282 AD2d 965, 96 NY2d 719; *Society of N.Y. Hosp. v Axelrod,* 163 AD2d 142; *Matter of Beekman-Downtown Hosp. v Whalen,* 44 NY2d 124.) II. The methodology and resulting rates violate Public Health Law § 2807 (3) and § 2808 (3). (*Matter of Society of N.Y. Hosp. v Axelrod,* 70 NY2d 467; *Virginia Hosp. Assn. v Baliles,* 868 F2d 653, *affd sub nom. Wilder v Virginia Hospital Assn.,* 496 US 498; *Kansas Health Care Assn., Inc. v Kansas Dept. of Social & Rehabilitation Servs.,* 31 F3d 1536; *Matter of United Home for Aged Hebrews v Axelrod,* 201 AD2d 656, 83 NY2d 760; *Erie County Geriatric Ctr. v Sullivan,* 952 F2d 71; *New Jersey Hosp. Assn. v Waldman,* 73 F3d 509; *Abbeville Gen. Hosp. v Ramsey,* 3 F3d 797, 511 US 1032; *Matter of St. James Nursing Home v DeBuono,* 12 AD3d 921; *Multicare Med. Ctr. v State of Wash.,* 768 F Supp 1349; *Temple Univ. v White,* 941 F2d 201.) III. The resulting rates deny the Erie Region homes equal protection of the laws and constitute a taking. (*Reynolds v Sims,* 377 US 533; *Reed v Reed,* 404 US 71; *Weissman v Evans,* 56 NY2d 458; *Dorsey v Stuyvesant Town Corp.,* 299 NY 512, 339 US 981; *Matter of Abrams v Bronstein,* 33 NY2d 488; *Greenstein v Bane,* 833 F Supp 1054; *Schweiker v Wilson,* 450 US 221; *McGrath v Lippman,* 273 AD2d 740; *Johnson v Rodriguez,* 110 F3d 299, 522 US 995; *Allegheny Pittsburgh Coal Co. v Commission of Webster Cty.,* 488 US 336.) IV. Recalculated rates for 2004 and thereafter constitute the appropriate form of relief for the Erie Region homes. (*Matter of Avon Nursing Home v Axelrod,* 83 NY2d 977; *New York State Assn. of Counties v Axelrod,* 78 NY2d 158; *Matter of St. James Nursing Home v DeBuono,* 12 AD3d 921; *Temple Univ. v White,* 941 F2d 201, *cert denied sub nom. Snider v Temple Univ.,* 502 US 1032.)

*Eliot Spitzer, Attorney General,* Albany (*Victor Paladino, Caitlin J. Halligan, Daniel Smirlock* and *Nancy A. Spiegel* of counsel), for respondents. I. Petitioners have failed to make a compelling showing that the use of 1983 base year costs and the trend factors is irrational. (*Matter of Catholic Med. Ctr. of Brooklyn & Queens v Department of Health of State of N.Y.,* 48 NY2d 967; *Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health,* 85 NY2d 326; *Matter of Beekman-Downtown Hosp. v Whalen,* 44 NY2d 124; *Matter of Blossom View Nursing Home v Novello,* 4 NY3d 581; *Matter of Brothers of Mercy Nursing & Rehabilitation Ctr. v DeBuono,*

292 AD2d 775, 98 NY2d 692, 99 NY2d 502; *Matter of Brothers of Mercy Nursing & Rehabilitation Ctr. v Commissioner of N.Y. State Dept. of Health,* 192 AD2d 50, 83 NY2d 977.) II. Petitioners have failed to show that their overall rates are inadequate under Public Health Law § 2807 (3). (*Matter of New York Tel. Co. v Public Serv. Commn. of State of N.Y.,* 95 NY2d 40; *Matter of Patterson SNF v Chassin,* 196 AD2d 155, 83 NY2d 962; *Matter of St. James Nursing Home v DeBuono,* 12 AD3d 921; *New York State Health Facilities Assn. v Axelrod,* 154 AD2d 10; *Matter of High Point Hosp. v Surles,* 218 AD2d 874; *Matter of Bellevue Maternity Hosp. v McBarnette,* 203 AD2d 769; *Matter of Sunrise Manor Nursing Home v Axelrod,* 135 AD2d 293; *Matter of Arnot-Ogden Mem. Hosp. v Blue Cross of Cent. N.Y.,* 118 AD2d 185; *Lett v Magnant,* 965 F2d 251; *Portland Residence, Inc. v Steffen,* 34 F3d 669.) III. Because participation in the Medicaid program is voluntary, the allegedly inadequate Medicaid reimbursement does not constitute a taking without just compensation. (*Garelick v Sullivan,* 987 F2d 913; *Whitney v Heckler,* 780 F2d 963, *cert denied sub nom. Whitney v Bowen,* 479 US 813; *Minnesota Assn. of Health Care Facilities, Inc. v Minnesota Dept. of Pub. Welfare,* 742 F2d 442, 469 US 1215; *St. Francis Hosp. Ctr. v Heckler,* 714 F2d 872; *Idaho Health Care Assn. v Sullivan,* 716 F Supp 464; *Matter of New York State Health Facilities Assn. v Axelrod,* 77 NY2d 340.) IV. Petitioners' 2004 rates and the rate-setting methodology do not deprive them of equal protection. (*Matter of Samaritan Hosp. v Axelrod,* 107 AD2d 911, 65 NY2d 636; *Matter of 303 W. 42nd St. Corp. v Klein,* 46 NY2d 686.) V. Even if petitioners prevail, they are not entitled to a court order requiring reimbursement of their 2004 allowable costs. (*Matter of Cabrini Med. Ctr. v Axelrod,* 177 AD2d 824, 79 NY2d 755; *Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health,* 84 NY2d 252.)

## OPINION OF THE COURT

READ, J.

Petitioners in this CPLR article 78 proceeding are 62 nursing homes operating in western New York, which are reimbursed by the State of New York under its Medical Assistance Plan (Medicaid) for medical services provided to the indigent. On this appeal, petitioners claim that the Medicaid reimbursement that they have received since 2004 is nowhere near their legitimate actual costs to care for Medicaid-eligible residents, and that this

massive shortfall threatens their financial viability and potentially compromises the quality of care. They blame their plight on the New York State Department of Health's (DOH) Medicaid rate-setting methodology, which they claim irrationally relies on outdated and unrepresentative 1983 costs, keys inflation to the Consumer Price Index (CPI) and ignores inflation entirely for 1996; violates Public Health Law § 2807 (3)'s mandate for "reasonable and adequate" rates; and confiscates their property and deprives them of equal protection of the laws in violation of the federal and state constitutions. Petitioners ask us to declare DOH's 2004 Medicaid rates and rate-setting methodology unlawful as applied to them; to direct the Commissioner of Health and the Director of the Division of the Budget to recalculate their 2004 Medicaid rates based on their legitimate actual 2003 or 2004 costs; and to take whatever action is necessary to eliminate or prevent post-2004 discrepancies between their justifiable costs and the Medicaid reimbursement that they receive.

Supreme Court dismissed the petition. The court noted that DOH's rate-setting methodology included adjustments to account for regional differences in wages and fringe benefits; and that the Legislature had on occasion outright appropriated additional funds to nursing homes to cover unusual costs, and had recently amended the Public Health Law to allow use of 2001 wages and fringe benefits to calculate reimbursement rates for rate periods after April 2004. Nor was Supreme Court prepared to say that the CPI was an inadequate yardstick for measuring inflation. The Appellate Division affirmed the judgment "for reasons stated in the decision at Supreme Court" (21 AD3d 1388, 1388 [4th Dept 2005]), and subsequently granted petitioners leave to appeal. We now affirm.

I.

Medicaid, a joint federal-state program established pursuant to title XIX of the Social Security Act (42 USC § 1396 *et seq.*), pays for medical care for those otherwise unable to afford it, including nursing home care for older people with low incomes and limited assets. The federal government normally covers 50% of New York's Medicaid costs, while the state and local governments share responsibility for the rest. New York operates its own Medicaid program, setting its own guidelines for eligibility and services in conformity with federal statutes and rules.

Pursuant to article 28 of the Public Health Law, DOH establishes Medicaid reimbursement rates for nursing homes using a complex system called the Resource Utilization Group-II (RUG-II) case mix reimbursement methodology (*see generally* 10 NYCRR subpart 86-2; *Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581 [2005]). Simply put, a nursing home's reimbursement rate—the daily rate at which a facility can bill Medicaid for every Medicaid-eligible resident—reflects its allowable costs in a base year[1] as adjusted to reflect patient conditions and care needs and regional differences in wages and fringe benefits, and trended forward to account for inflation. In general, 1983 is the base year for calculating a nursing home's operating costs, which are the major constituent of its reimbursement rate (*see* 10 NYCRR 86-2.10 [b] [1]).

The Commissioner adopted this rate-setting methodology to encourage nursing homes to contain costs and operate efficiently and economically in line with their reimbursement rates. Specifically, rates are set in advance of the rate year, and are subject to a maximum (ceiling) and minimum (base) price derived from statewide averages (*see generally Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health*, 85 NY2d 326 [1995]).

For rate years on and after April 1, 2000, the Legislature requires DOH to use the "U.S. Consumer Price Index for all urban consumers published . . . after June first of the rate year prior to the year for which rates are being developed" as the trend factor (*see* Public Health Law § 2807-c [10] [c] [2]; *see also* L 2005, ch 58, part B, §§ 1, 2 [extending section 2807-c's expiration date from July 1, 2005 until July 1, 2007]). The Legislature has also mandated that Medicaid reimbursement rates for nursing homes in effect on and after April 1, 1996 through March 31, 2007 shall not reflect trend factor projections or adjustments for the period April 1, 1996 through March 31, 1997 (i.e., state fiscal year 1996-1997) (*see* L 1996, ch 474, § 194, as amended by L 2006, ch 57, part A, § 78).

Finally, the Legislature recently enacted Public Health Law § 2808 (2-b), which provides for updating the base year for operating costs beginning as of January 1, 2007 (*see* L 2006, ch 109, part C, § 47). This new provision mandates full implemen-

---

1. "Allowable costs" are defined as those costs that are "properly chargeable to necessary patient care" (10 NYCRR 86-2.17 [a]). DOH establishes a nursing home's allowable costs through an initial desk review of the nursing home's cost report for the base year and a later audit.

tation in 2009, preceded by a two-year phase-in period, and calls for a 2002 base year. Further, section 2808 (2-b) (f) specifies updating thereafter no later than the 2012 rate period, using a base year no earlier than three years prior to the initial rate year, and for subsequent updating at least every six years, again using a three-year-old or more recent base year.

## II.

"Generally, rate-setting actions of the Commissioner, being quasi-legislative in nature, may not be annulled except upon a compelling showing that the calculations from which [they] derived were unreasonable" (*Matter of Society of N.Y. Hosp. v Axelrod*, 70 NY2d 467, 473 [1987] [internal quotation marks omitted]). DOH is entitled to a "high degree of judicial deference, especially when . . . act[ing] in the area of its particular expertise," and thus petitioners bear the "heavy burden of showing" that DOH's rate-setting methodology "is unreasonable and unsupported by any evidence" (*Consolation Nursing Home*, 85 NY2d at 331-332).

At one time, DOH retrospectively reimbursed nursing homes based on their actual costs, which saddled taxpayers with ever-increasing expenditures without creating any incentives for efficiency. This is why DOH switched in 1986 to RUG-II, a prospective system linked to a base year, a key cost containment device that encourages facilities to economize (*see Blossom View Nursing Home*, 4 NY3d at 585 n 2 ["A base year is used in a prospective system to control for cost growth in excess of inflation"]).

Further, DOH's rate-setting methodology does not, as petitioners argue, preserve costs for all time in the amber of 1983. For example, if a facility's case mix index increases, so does its reimbursement rate. In addition, DOH has adjusted its methodology to reflect actual wages paid by each facility more realistically (*see Matter of Brothers of Mercy Nursing & Rehabilitation Ctr. v DeBuono*, 292 AD2d 775 [4th Dept 2002], *lv denied* 99 NY2d 502 [2002]; *Matter of Brothers of Mercy Nursing & Rehabilitation Ctr. v Commissioner of N.Y. State Dept. of Health*, 192 AD2d 50 [3d Dept 1993], *revd on other grounds* 83 NY2d 997 [1994]). In fact, DOH uses wage data from 1983, 1987, 1993 or 2001 when calculating reimbursement rates, depending on which year's data most favors a facility (*see* 10 NYCRR 86-2.10 [m]; Public Health Law § 2808 [17]).

Although petitioners fault DOH for using the CPI as the trend factor and disregarding inflation during state fiscal year 1996-

1997, these aspects of the rate-setting methodology are dictated by statute (*see* Public Health Law § 2807-c [10] [c] [2]; L 1996, ch 474, § 194, as amended by L 2006, ch 57, part A, § 78). The Legislature has also directed DOH to update the base year from 1983, but in 2009, after a two-year phase-in, not in 2004 as petitioners request.

■ In sum, we conclude that the Commissioner acted rationally in setting petitioners' 2004 Medicaid reimbursement rates. Within the parameters set by the Legislature, DOH has advanced ample explanation for setting rates prospectively based on 1983 costs, as adjusted in various ways and trended forward.

## III.

RUG-II was designed to produce rates complying with the federal Boren Amendment (42 USC former § 1396a [a] [13] [A]), which Congress repealed in 1997, and its New York analogue, section 2807 (3) of the Public Health Law. Section 2807 (3) tasks the Commissioner with determining that

> "the proposed rate schedules for payments to hospitals[2] for hospital and health-related services are *reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities*. In making such certification, the commissioner shall take into consideration the elements of cost, geographical differentials in the elements of cost considered, economic factors in the area in which the hospital is located, the rate of increase or decrease of the economy in the area in which the hospital is located, costs of hospitals of comparable size, and the need for incentives to improve services and institute economies" (emphasis added).

Petitioners contend that their Medicaid reimbursement for 2004 was roughly $1 million less per home than the actual cost to provide necessary care for Medicaid-eligible residents; or, stated another way, that their Medicaid reimbursement rates covered only about 76% of their actual 2002 Medicaid costs. Petitioners essentially point to this discrepancy (which the State disputes) as sufficient proof that DOH's reimbursement rates for 2004 were not reasonable and adequate as required by Public Health Law § 2807 (3).

---

**2.** The word "hospital" includes "nursing home" (Public Health Law § 2801 [1]).

■ As the Commissioner points out, however, section 2807 (3) does not require rates to cover every nursing home's actual costs, the remedy that petitioners effectively seek. Rates are "reasonable and adequate" so long as they reimburse the necessary costs (i.e., the "costs which must be incurred") of "efficiently and economically operated facilities" (EEOFs) (Public Health Law § 2807 [3]). In 1993, DOH conducted a study to determine whether its reimbursement rates satisfied this standard. DOH identified those facilities that were EEOFs; determined their necessary costs; and compared these costs to its reimbursement rates to assure that the rates were reasonable and adequate (see Pinnacle Nursing Home v Axelrod, 928 F2d 1306, 1314 [2d Cir 1991]). DOH subsequently used the findings from this study to confirm that its overall rates for rate years 1999 through 2003, the latest year for which data were available, complied with Public Health Law § 2807 (3). Thus, DOH had a rational basis for concluding that its 2004 reimbursement rates were reasonable and adequate. Moreover, DOH's rate-setting methodology takes each of the statutory factors in section 2807 (3) into account, and the Commissioner is entitled to great deference in her determination that the rates were reasonable under the statute.

■ ■ Finally, we reject petitioners' arguments that DOH's rate-setting methodology violates the Takings Clause of the Fifth and Fourteenth amendments of the Federal Constitution, and the Equal Protection clauses of the Fourteenth Amendment of the Federal Constitution and article I, § 11 of the New York State Constitution. Specifically, petitioners contend that New York effectively requires them to provide care to the indigent and then fails to reimburse them for their actual costs, thus forcing them to use their own assets to meet this public responsibility. But "where a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking" (Garelick v Sullivan, 987 F2d 913, 916 [2d Cir 1993] [contrasting circumstances of a public utility which is "under a state statutory duty to serve the public"], cert denied sub nom. Garelick v Shalala, 510 US 821 [1993]). As for petitioners' claim that DOH's rate-setting methodology favors nursing homes in the New York City area, they have not shown any intentional action by DOH to discriminate against facilities in western New York (see Matter of Samaritan Hosp. v Axelrod, 107 AD2d 911, 913 [3d Dept 1985] ["To support an equal protection argument,

petitioner must show that any discriminatory effect of the regulations was the result of respondents' ' "evil eye" ' toward discrimination against petitioner"], quoting *Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 695 [1979] [equal protection "forbids a public authority from applying or enforcing an admittedly valid law with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances" (*id.* at 693; internal quotation marks omitted)]).

Accordingly, the order of the Appellate Division should be affirmed, with costs. The certified question should not be answered upon the ground that it is unnecessary.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur; Judge PIGOTT taking no part.

Order affirmed, etc.