OPINION OF THE COURT
Kenneth L. Thompson, Jr., J.
The decision/order on this motion is as follows:
Petitioner, the Bronx-Lebanon Highbridge Woodycrest Center, a residential health care facility, seeks a declaratory judgment in this CPLR article 78 proceeding, declaring that certain Medicaid reimbursement rate determinations by respondent, the New York State Department of Health (DOH), are erroneous, arbitrary, capricious and contrary to law, and consequently, annulling such determinations and directing DOH to recalculate the determinations, fully reimbursing monies otherwise wrongfully withheld from Woodycrest. The disputed Medicaid reimbursement rates cover the period of April 1, 2009 to December 31, 2011. Since January 1, 2012, a new methodology for calculating Medicaid reimbursement rates went into effect. This post December 31, 2011 rate-setting methodology and the rates so computed are not at issue in this action.
Preliminarily, DOH has submitted a surreply dated November 19, 2013, which was necessitated by arguments interposed in a reply memorandum of law. Notably, there was no memorandum of law submitted with the petition. As a matter of equity and at the written request of Woodycrest, since the court considered the surreply papers, the court also reviewed the letter from Woodycrest dated January 9, 2014, which contained two substantive paragraphs of argument, as well as reviewed the accompanying letter to the surreply, which was dated November 20, 2013.
Pursuant to stipulation dated August 28, 2015 the ninth cause of action regarding the statewide prescription drug percentage is withdrawn with prejudice.
In 2006, subdivision (2-b) was added to Public Health Law § 2808 and became commonly known as the Rebasing Law. Up until this time the base year for prospective rate setting was *1118 1983. Subdivision (2-b) updated the base year to 2002 for facilities who would benefit from such an update in base years.
The Rebasing Law included what is commonly known as the hold harmless provision. (Public Health Law § 2808 [2-b] [b] [i] [A].) The hold harmless provision provided that any facility that received greater reimbursement in 2008 using 1983 as a base year, as adjusted for inflation, than the 2002 rebased year, as adjusted for inflation, could receive the greater reimbursement provided by the 2008 year adjusted for inflation. It is undisputed that Woodycrest is a hold harmless facility.
In 2009, financing legislation was enacted that limited the statewide level of additional reimbursement as a result of the Rebasing Law to $210,000,000. (Public Health Law § 2808 [2-b] [b].) This law became commonly known as the Scale Back Law as the statewide additional expenditures to rebased facilities significantly exceeded the $210,000,000 allocated to reimburse facilities under the Rebasing Law.
Statewide Reduction
Woodycrest argues that only facilities that benefitted from rebasing, and hence had responsibility for increased Medicaid expenditures, should be subject to the reduction in benefits to limit the increase in benefits to $210,000,000. As a hold harmless facility Woodycrest argues it did not benefit from rebasing and therefore should not share the burden of statewide reduction.
The issue is whether the reduction in reimbursement for each facility should be proportional to the gain in compensation from rebasing, or is the reduction in reimbursement proportionate to overall Medicaid reimbursement provided to the facilities. DOH has chosen the latter method of calculating the scale back amount for each facility, resulting in Woodycrest receiving less Medicaid reimbursement than under a method of calculating the scale back rate proportional to the gain in compensation from rebasing. The method chosen by DOH to implement the scale back more widely spreads the reduction in Medicaid reimbursement required by the Scale Back Law. Moreover, by the very terms of the Rebasing Law, adjustments made pursuant to Public Health Law § 2808 (2-b) (g), and Laws of 2011 (ch 59, § 1, part H, § 96, amending L 2009, ch 58, § 1, part D, § 2), affected the reimbursement rates of hold harmless as well as rebased facilities.
“ ‘Generally, rate-setting actions of the Commissioner, being quasi-legislative in nature, may not *1119 be annulled except upon a compelling showing that the calculations from which [they] derived were unreasonable’ (Matter of Society of N.Y. Hosp. v Axelrod, 70 NY2d 467, 473 [1987] [internal quotation marks omitted]). DOH is entitled to a ‘high degree of judicial deference, especially when . . . act[ing] in the area of its particular expertise,’ and thus petitioners bear the ‘heavy burden of showing5 that DOH’s rate-setting methodology ‘is unreasonable and unsupported by any evidence’ (Consolation Nursing Home, 85 NY2d at 331-332).” (Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 544 [2006].)
More specifically, the Third Department held in a case in which there was a legislative directive to exclude certain Medicaid payments that the “interpretation and implementation [of the statute] was most appropriately left to [DOH’s] sound discretion.” (Matter of Reconstruction Home & Health Care Ctr., Inc. v Daines, 65 AD3d 786, 787 [3d Dept 2009].) Woodycrest has failed to show that the method by which DOH effected a scale back was arbitrary, capricious and contrary to law.
Accordingly, the fifth and sixth causes of action of Woody-crest are dismissed.
Additional Staff Add-On
In calculating a post-rebasing reimbursement rate for Woodycrest, a hold harmless facility, DOH did not include as an operating expense a Nursing Salary Adjustment, which was added after the 1983 base year. (10 NYCRR 86-2.10 [r].) However, under Public Health Law § 2808 (2-b) (b) (i) (A), the hold harmless facilities, such as Woodycrest, shall not receive an “operating cost component of rates of payment . . . [that is] less than the operating component . . . received in the two thousand eight rate period, as adjusted for inflation on an annual basis.”
10 NYCRR 86-2.10 (r) (1) directs that the Nursing Salary Adjustment applies to the “operating portion of the rate.” Clearly the legislature, by statute, could have removed the Nursing Salary Adjustment from the operating expenses of the hold harmless facilities, but it did not. DOH’s actions in not including the Nursing Salary Adjustment in its reimbursement rate calculations was arbitrary, capricious and contrary to law. *1120 Therefore, under statute and the regulations of the DOH, Woodycrest is entitled to the Nursing Salary Adjustment Woodycrest received in 2008.
Accordingly, pursuant to Woodycrest’s first and second causes of action, it is declared that Woodycrest is entitled to receive the Nursing Salary Adjustment of $12.09 per patient day, for the pertinent period of time. The previous Medicaid rate determination by respondents is annulled as arbitrary, capricious and contrary to law and DOH shall recalculate Woody-crest’s Medicaid rate for the pertinent period to include the Nursing Salary Adjustment of $12.09 per day.
OBRA Add-On
Unlike the nursing add-on, the federal Omnibus Budget Reconciliation Act of 1987 (OBRA) add-on was designated to be added to the rate, rather than the operating expenses as it was with the Nursing Salary Adjustment. OBRA added $.84 per Medicaid patient day to the reimbursement provided to the facilities. The additional reimbursement under OBRA was to pay for federal requirements in the following area: “the completion of resident assessments, the development and review of comprehensive care plans for residents, staff training for the new resident assessment tool, quality assurance committee costs, nurse aide registry costs, psychotropic drug reviews, and surety bond requirements.” (10 NYCRR 86-2.10 [u] [1].)
Under 10 NYCRR 86-2.10 (u), a facility was “to receive a per diem adjustment to its rate.” Therefore the Hold Harmless Law, Public Health Law § 2808 (2-b) (b) (i) (A), does not apply to the OBRA add-on, as the Hold Harmless Law refers exclusively to maintaining the operating component of the rate received, not the actual overall daily rate the facility received.
Accordingly, the third and fourth causes of action are dismissed.
Reserved Bed Day
In setting rates, the dollar amount of the total of operating and capital costs of a facility is divided by the number of patient days. DOH’s calculation of the number of patient days for purposes of the aforementioned formula included both the number of patient days when a patient physically was present at the facility and occupied a bed and also counted those days the patient was temporarily absent from the facility. DOH reimbursed the facility at the resulting per diem rate for both types of patient days.
*1121 The reserved bed day issue has been definitively resolved by the First Department in the following holding:
“While deference is generally given to an agency’s interpretation of its regulations, Supreme Court properly concluded that the Department of Health’s (DOH) inclusion of reserved bed patient days in the total of patient days when calculating plaintiff nursing facilities’ base per diem Medicaid reimbursement rate, is irrational, unreasonable and contrary to the plain language of 10 NYCRR 86-2.8 — the controlling regulation (see Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 544 [2006]; Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health, 5 NY3d 499, 506 [2005]). Indeed, the regulation makes clear that ‘patient days’ and ‘reserved bed patient days’ are mutually exclusive, are to be calculated separately, and bear no relation to each other (10 NYCRR 86-2.8 [a], [d]).” (Kateri Residence v Novello, 95 AD3d 619, 619-620 [1st Dept 2012].)
Accordingly, pursuant to Woodycrest’s seventh and eighth causes of action, it is declared that reserved bed days be removed from the total patient days when calculating Woody-crest’s Medicaid rates, and DOH is directed to recalculate Woodycrest’s Medicaid rates to exclude reserved bed days from total patient days.
Conclusion
Pursuant to Woodycrest’s first and second causes of action, it is declared that Woodycrest is entitled to receive the Nursing Salary Adjustment of $12.09 per day, for the pertinent period of time. The previous Medicaid rate determination by respondents is annulled as arbitrary, capricious and contrary to law and DOH shall recalculate Woodycrest’s Medicaid rate for the pertinent period to include the Nursing Salary Adjustment of $12.09 per day.
Pursuant to Woodycrest’s seventh and eighth causes of action, it is declared that reserved bed days be removed from the total patient days when calculating Woodycrest’s Medicaid rates, and DOH is directed to recalculate Woodycrest’s Medicaid rates to exclude reserved bed days from total patient days.
*1122 The third, fourth, fifth and sixth causes of action of Woody-crest are dismissed. The ninth cause of action is withdrawn with prejudice.