# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 31
In the Matter of Aaron Manor
Rehabilitation and Nursing
Center, LLC, et al.,
    Respondents-Appellants,
      v.
Howard A. Zucker, &c., et al.,
    Appellants-Respondents.

Kate H. Nepveu, for appellants-respondents.
F. Paul Greene, for respondents-appellants.
New York State Health Facilities Association, Inc., amicus curiae.

RIVERA, J.:

On these cross appeals, we reject petitioners' challenges to adjusted Medicaid reimbursement rates issued to comply with amended Public Health Law ("PHL") § 2808 (20) (d), which mandates the elimination of one component from the computation formula used to set rates of for-profit residential health care facilities, on or after April 1, 2020. The amendment and the adjusted rates do not result in a retroactive effect and petitioners failed to establish that the rates are not "reasonable and adequate to meet costs" under PHL § 2807 (3) or that the rates violate their equal protection rights. We hold that respondents

- 1 -

may implement the recalculated rates for services provided as of April 2, 2020, and that petitioners' other claims were properly dismissed.

I.

Medicaid is "a joint federal-state program established pursuant to [T]itle XIX of the Social Security Act (42 USC § 1396 *et seq.*), [which] pays for medical care for those otherwise unable to afford it, including nursing home care for older people with low incomes and limited assets" (*Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 542 [2006]). These services are delivered through a system of both proprietary—or for-profit—and not-for-profit facilities (10 NYCRR § 86-2.10; § 86-2.19; § 86-2.20; § 86-2.21; § 86-2.22; 10 NYCRR 86-2.19 [a], [b], [c]). The New York State Department of Health and its Commissioner administer New York's Medicaid program, including setting reimbursement rates to nursing home providers (*see* Social Services Law § 363-a [1], [2]). Unless "otherwise authorized by law," or expressly exempted under PHL § 2808 (11), the Department must set reimbursement rates in advance of the dates of service and notify facilities "at least sixty days prior to the beginning of an established rate period for which the rate is to become effective," as required by PHL § 2807 (7).

Medicaid reimbursement rates for facilities are made up of two components: operating expenses and capital expenses, the latter of which includes interest for debt on capital expenses and the cost of real property and equipment. The Department calculates rates based on a complex multifactor formula that accounts for capital and noncapital expenses. After the expiration of a 40-year period, the Commissioner had discretion to

approve a payment factor not to exceed half of the capital cost reimbursement received by the facility in the final year of its useful facility life (10 NYCRR 86-2.21 [e] [7]). Prior to the legislative action underlying this appeal, a "residual equity reimbursement factor" was part of the capital cost component of Medicaid rates of for-profit residential health care facilities. This factor was a return on the facility's "equity", as defined in the regulations, and was included in the facility's annual capital costs during its useful facility life, which is defined by regulation as the 40-year period after commencement of a nursing home's operations, with the opportunity for extension in certain circumstances that are not at issue here (*see* 10 NYCRR § 86-2.10; § 86-2.19; §§ 86-2.20-86-2.22). In contrast, the capital costs for not-for-profit facilities were and continue to be reimbursed based on depreciation, which the Attorney General describes as "reimbursement [ ] divided over the estimated useful life of a given item" (*see* Not-For-Profit Corporation Law 102 [a] [5]; 515 [a]; 10 NYCRR 86-2.19 [a], [b], [c]).

On April 3, 2020, in the wake of skyrocketing Medicaid costs in New York that contributed to a $6 billion budget gap, the legislature passed the 2020-2021 Budget Law which included Medicaid cost reduction measures (Jesse McKinley, *The Governor and the $6 Billion Budget Gap*, NY Times [March 10, 2020], https://www.nytimes.com/2020/03/10/nyregion/budget-medicaid-cuomo-ny.html [last accessed Mar. 22, 2024]; Luis Ferré-Sadurní & Jesse McKinley, *NY Hospitals Face $400 Million in Cuts Even as Virus Battle Rages*, NY Times [Mar 30, 2020], https://www.nytimes.com/2020/03/30/nyregion/coronavirus-hospitals-medicaid-

budget.html [last accessed Mar. 22, 2024]). On the recommendation of the Medicaid Redesign Team II, the legislature reduced the capital cost component 5% for all nursing homes and amended PHL § 2808 (20) (d) to eliminate the residual equity reimbursement factor ("the elimination clause").[1] The legislature mandated that both measures "shall take effect immediately and shall be deemed to have been in full force and effect on and after April 1, 2020" (Ch. 56, § 1, Part NN, § 3, 2020 N.Y. Laws [LRS], p. 274). The legislature further specified that the elimination clause applies to rate periods as of this same date, "[n]otwithstanding any contrary provision of law, rule or regulation" (PHL § 2808 [20] [d]).

The Department determined that section 2808 (20) (d), as amended, required adjustment of Medicaid rates and accordingly filed a State Plan Amendment that removed residual equity payments on or after April 2, 2020. Upon approval by the federal Centers for Medicare and Medicaid Services, the new rates were uploaded to the State payment system. On August 7, 2020, by letter issued to for-profit facilities, the Department announced the new rates, effective as of April 2, 2020.

---

[1] The Medicaid Redesign Team II was tasked with developing recommendations to reduce Medicaid costs and "restore financial stability" to the Medicaid program by achieving $2.5 billion in savings. The team proposed a series of legislative changes for the 2020 budget, including the 5% reduction and elimination of residual equity reimbursement, that would reduce Medicaid expenditures (MRT II Executive Summary of Proposals, https://www.health.ny.gov/health_care/medicaid/redesign/mrt2/docs/2020-03-19_executive_summary_of_proposals.pdf [Mar. 19, 2020]).

Petitioners, 116 for-profit nursing homes, filed this hybrid declaratory judgment and article 78 proceeding against State respondents—the Department and its Commissioner and the Director of the Budget—challenging the Department's implementation of the recalculated rates without the residual equity reimbursement factor. Simultaneously, petitioners moved for a preliminary injunction to prevent respondents from enforcing the equity elimination clause. Supreme Court granted petitioners' motion for a preliminary injunction against enforcement of the clause pending a final determination of the proceeding. Petitioners thereafter filed an amended complaint which, among other things sought an order barring enforcement of the elimination clause and a declaration that implementation of the clause violates: (1) PHL § 2807 (7)'s prohibition on retroactive rate-making and 60-day advance notice requirement; (2) PHL § 2807 (3)'s requirement that reimbursement rates be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities;" and (3) petitioners' state and federal equal protection rights by treating them differently from similarly-situated non-profit nursing homes.

Following joinder of issue, respondents moved for summary judgment dismissing the declaratory judgment claims and to reargue or modify the preliminary injunction.

Supreme Court, among other things, (1) granted so much of respondents' motion for summary judgment dismissing the PHL § 2807 (3) and equal protection causes of action as lacking merit; (2) denied so much of respondents' motion to dismiss the cause of action that the elimination clause violated PHL § 2807 (7)'s prohibition on retroactive rate-

making and 60-day advance notice requirements, because the court found the elimination clause was illegally retroactive; (3) granted the same cause of action to petitioners to the extent of declaring that any change to petitioners' Medicaid reimbursement rates in accordance with PHL § 2808 (20) (d), back to April 1, 2020, is improperly retroactive and violative of PHL § 2807 (7); and (4) granted the cause of action to petitioners seeking to bar respondents from implementing the elimination clause to the extent of barring any action to implement retroactively to April 1, 2020. The court also denied respondents leave to reargue or modify the preliminary injunction determination.

The Appellate Division affirmed, upholding Supreme Court's partial grant of respondents' motion for summary judgment on the ground that petitioners failed to raise a material issue of fact in response to respondents' initial showing that the rates were lawful, and agreed with petitioners that the adjusted rates were improperly applied retroactively (205 AD3d 1193 [2022]). We granted the parties' motions for leave to appeal (39 NY3d 906 [2023]; 39 NY 3d 908 [2023]).

## II. Respondents' Appeal

Respondents argue that the advance notice requirements do not apply to retroactive rate adjustments that are authorized by the legislature; that the plain language of PHL § 2808 (20) (d) exempts them from the notice requirements; and that the phrasing of "for rate periods on and after" implies the changes applied to the current rate period, rather than the next calendar year's rate period as argued by petitioners (PHL § 2808 [20] [d], Ch. 56, §

1, Part NN, § 2, 2020 N.Y. Laws [LRS], p. 274). Petitioners respond that the phrase "rate period" implies calendar year, making the earliest effective date with notice January 1, 2021; that PHL § 2807 (3) barred retroactive rate changes; and that there was no clear expression of retroactive intent in the equity elimination clause that superseded these notice requirements.

A.

We must first determine whether the Department acted in violation of the legislature's intent when it announced recalculated rates in August 2020, for services provided on or after April 2, 2020. To decide that issue we look first to "the plain language of the statute [which] is the clearest indicator of legislative intent" (*T-Mobile Ne., LLC v DeBellis*, 32 NY3d 594, 607 [2018], citing *Majewski v Broadalbin–Perth Cent. Sch. Dist.*, 91 NY2d 577, 583 [1998]).

We conclude that the legislature clearly expressed its intent that the elimination clause be applied without delay, and that the initial implementing ratemaking was not subject to the usual 60-day advance notice requirement. PHL § 2808 (20) (d), enacted on April 3, 2020, states that the elimination clause applies to "rate periods on and after April first, two thousand twenty" (Ch. 56, § 1, Part NN, § 2, 2020 N.Y. Laws [LRS], p. 274). The legislature also declared that the Medicaid cost-reduction measures in the 2020-2021 budget bill—the 5% cut affecting all facilities and the targeted elimination clause—"shall take effect immediately and shall be deemed to be in full force and effect on and after April 1, 2020," thus further evincing the legislature's intent that there be no delay in reducing

the Medicaid rates. While the mere inclusion of language that a law takes "immediate effect" is insufficient on its own to establish legislative intent (*Gottwald v Sebert*, 40 NY3d 240, 259 [2023]), here the language is tethered to a specific start date chosen by the legislature, and the measures are declared "to be in full force and effect" as of that date, thus making clear that April 1st is the effective date of the affected rate periods. In other words, the legislature intended that the residual equity reimbursement factor could no longer be considered in calculating rates for payments on or after April 1st.

Petitioners' assertion that the elimination clause is subject to the PHL § 2807 (7) 60-day notice requirement is belied by the statutory framework. As the Court has previously observed, and contrary to petitioners' argument, the " 'notwithstanding' clause is, as a general rule, plainly understood and clearly supersedes any inconsistent provisions of state law" (*Matter of State of New York v John S.*, 23 NY3d 326, 341 [2014]). PHL § 2807 (7) is subject to exceptions, including those set forth in PHL § 2808 (11) which provides, in turn, that the 60-day requirement "shall not apply. . . as otherwise authorized by law." Thus, the requirement of PHL § 2807 (7) must yield to a law that authorizes ratemaking without the notification delay. PHL § 2808 (20) (d) states that it applies, "notwithstanding any contrary provision of law, rule or regulation." Because the 60-day advance notice requirement would frustrate the cost-saving purpose of PHL § 2808 (20) (d), adopted in the midst of a fiscal crisis, it is contrary to the immediate implementation of PHL § 2808 (20) (d). Therefore, it eliminates the advance notice requirement.

Petitioners argue that the use of the term "rate periods" must mean that the factor can no longer be considered for periods that run at the earliest from January 1, 2021, because that is the month when rates are typically made effective following the 60-day rate schedule announcement in November of the prior year. We reject what is essentially a customary practice argument since the legislature can, as it has here, choose a different course. In any case, the petitioners' argument fails on its own terms because, as respondents counter, at any time rates may be adjusted retroactively in certain enumerated circumstances, including to account for changes in conditions or findings related to costs and expenses pursuant to an audit (PHL § 2808 [20]). Thus, the legislature knew when it amended PHL § 2808 (20) (d) that a rate period—meaning the time period to which the rate applies—may encompass something less than a full year and need not start on January 1st.

B.

The courts below and the petitioners mistakenly characterize the Department's recalculated rates as an impermissible retroactive application of PHL § 2808 (20) (d). A statute, and its administrative implementation, have "retroactive effect if '[they] would impair rights a party possessed when [they] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed,' thus impacting 'substantive' rights (*Regina Metro. Co., LLC v New York State Div. of Hous. and Community Renewal*, 35 NY3d 332, 365 [2020], citing *Landgraf v USI Film Products*, 511 US at 278-280 [1994]). "[T]he date that legislation is to take effect is a separate

question from whether the statute should apply to claims and rights then in existence" (*Majewski v Broadalbin-Perth Cent. Sch. Dist*., 91 NY2d 577, 583 [1998]). Critically, "a statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment" (*Gottwald v Sebert*, 40 NY3d 240 [2023], quoting *Landgraf*, 511 US 244, 269).

Here, with the exception of, at most, the first two days in April, the residual equity reimbursement factor was eliminated for services provided on and after the enactment date of § 2808 (20) (d).[2] Accordingly, the law and recalculated rates did not "impair rights a party possessed when [they] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," (*Regina*, 35 NY3d at 365). In other words, there was no retroactive impact on petitioners' substantive rights because petitioners had not yet provided services and earned any reimbursement payment.[3]

---

[2] The two-day period is legally insignificant and does not drive our retroactivity analysis here where petitioners are concerned with limiting the reduction in their rates for periods after the amendment's effective date and before what they claim is the requisite 60-day advance notice requirement.

[3] Petitioners' and the Appellate Division's reliance on *Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health* (84 NY2d 252, 257 [1994]) is similarly misplaced. That case is distinguishable because there the Department, and not the legislature, attempted to make rate changes retroactively, which we held was prohibited by PHL § 2807 (7) (*see id.* at 260-262). Here, by contrast, the legislature authorized prospective rate changes, and because the rate changes were authorized by the legislature, the notice requirements of section 2807 (7) cannot thwart the legislature's clearly expressed intent.

The *Alliance of American Insurers v Chu* test that requires consideration of the "fairness to the parties, reliance on pre-existing law, the extent of retroactivity and the nature of the public interest served by the law," also supports the conclusion that there is no violation from the Department's recalculation of rates without the capital cost factor for services provided on and after April 2, 2020 (77 NY2d 573, 586 [1991]). Rate changes may occur at any time during the year for any number of reasons, and even petitioners do not argue that the legislature or the Department can never adjust rates already set, thus minimizing any unfairness to petitioners or reliance on rates for services provided prior to the passage of the elimination clause. Indeed, the Department did not seek to claw back rates for services rendered before the April 2, 2020 date; thus, with the exception of one day, the recalculation is limited to services rendered as of the effective date of the law. Finally, the millions in savings achieved by the rate changes required by the elimination clause serves the public interest in reducing Medicaid costs. Accordingly, it was proper for the Department to incorporate the impact of the elimination clause into its rates, effective immediately without a notice period.

III.

Petitioners' Cross Appeal

Petitioners challenge the dismissal of the PHL § 2807 (3) and equal protection claims. Respondents counter that petitioners failed to plead that the rates do not cover

necessary costs, and that petitioners are not similarly-situated to non-profit nursing homes, as would be necessary to assert an equal protection claim.

Summary judgment should be granted only when it "clearly appear[s] that no material and triable issue of fact is presented" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 315 [2004] [internal quotation marks and citation omitted]). "[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tending sufficient evidence to demonstrate the absence of any material issues of fact" (*Matter of New York City Asbestos Litig. v Chevron Corp.,* 33 NY3d 20, 25-26 [2019], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). We conclude that respondents satisfied their burden on summary judgment and petitioners failed to identify a genuine issue of material fact.

PHL § 2807 (3) of the Public Health Law provides that the Department of Health Commissioner is required to certify to the Director of Budget that the proposed Medicaid reimbursement rates, "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." The provision requires reimbursement for only necessary costs, not actual or all costs (*see Nazareth Home of Franciscan Sisters v Novello*, 7 NY3d 538, 546 [2006]). Petitioners' claim fails because it contests the elimination of one factor in the determination of reimbursement rates without establishing that the readjusted rates fall below the legislative standard.[4] Petitioners

---

[4] Petitioners, like any other residential health care facility, may seek administrative individual rate adjustments based on the specific facts of each of the facilities'

essentially contend that the residual equity reimbursement factor was necessary to provide sufficient reimbursement under the law and, without that reimbursement, the rates cannot be adequate. Here, the Department responded to a mandate from the legislature to eliminate one factor in determining Medicaid reimbursement rates. The elimination of that factor does not, as petitioners would have it, automatically result in a rate that fails to reimburse each of these petitioners' necessary costs. In other words, elimination of the residual equity reimbursement factor does not automatically establish that the adjusted rates overall are not "reasonable and adequate to meet the costs incurred by efficiently and economically operated facilities."

Moreover, the legislature eliminated the residual equity reimbursement factor as a cost-saving measure upon recommendation of the Medicaid Redesign Team II, evincing the legislature's determination that, even without this factor, rates could be adequate to cover necessary costs and still reap budget savings for the State (*see The Governor and the $6 Billion Budget Gap*, NY Times; *NY Hospitals Face $400 Million in Cuts*, NY Times). The Department was bound to effectuate this legislative mandate by adjusting the rates of for-profit facilities across the board, and could not, as petitioners suggest, make up for the possible reduction in reimbursement payments by increasing the rates in some other way. Any such action would be contrary to the statute and ultra vires.

---

circumstances, including their necessary costs, and if they are denied relief, they may challenge those individual determinations based on the facts specific to their case (42 USCA § 1983; 10 NYCRR 86–2.13[a]; 10 NYCRR 86–2.13[b]).

Petitioners' equal protection claim is similarly without merit. "[T]he constitutional guarantee of equal protection is that all persons similarly situated must be treated alike" (*Matter of State of New York v Myron P*., 20 NY3d 206, 211 [2012]). The residual equity reimbursement factor applied only to for-profits and was capped at half the capital cost reimbursement received in the facility's 40th year. Not-for-profits are reimbursed for their capital costs based on a per item depreciation analysis and are not subject to a cap amount. The equity versus depreciation distinction and the cap on the residual equity reimbursement factor sufficiently establish that petitioners as for-profit nursing homes are not similarly situated to not-for-profit nursing homes. Moreover, petitioners and not-for-profit nursing homes are not similarly situated for purposes of this discrete equal protection claim because, as the Appellate Division noted, they have fundamentally different "underlying economic purposes and incentives" (205 AD3d at 1198, quoting *Bay Park Ctr. for Nursing & Rehabilitation, LLC v Shah*, 111 AD3d 1227, 1229 [2013] [citations omitted]).

IV.

Accordingly, the order of the Appellate Division should be modified, with costs to defendants/respondents, in accordance with this opinion and, as so modified, affirmed.

Order modified, with costs to defendants/respondents, in accordance with the opinion herein and, as so modified, affirmed. Opinion by Judge Rivera. Chief Judge Wilson and Judges Garcia, Singas, Cannataro, Troutman and Halligan concur.

Decided April 23, 2024