# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  April 7, 2016                    521067
_____

In the Matter of NEW YORK STATE
    CORRECTIONAL OFFICERS AND
    POLICE BENEVOLENT
    ASSOCIATION, INC., et al.,
                    Appellants,            MEMORANDUM AND ORDER
        v

NEW YORK STATE OFFICE OF MENTAL
    HEALTH et al.,
                    Respondents.
_____

Calendar Date:  February 11, 2016

Before:  Garry, J.P., Egan Jr., Lynch, Devine and Clark, JJ.

_____

        Sheehan Greene Golderman & Jacques, LLP, Albany (Lawrence
H. Schaefer of counsel), for appellants.

        Eric T. Schneiderman, Attorney General, Albany (Allyson B.
Levine of counsel), for respondents.

_____

Garry, J.P.

        Appeal from a judgment of the Supreme Court (Elliott III,
J.), entered July 30, 2014 in Albany County, which dismissed
petitioners' application, in a proceeding pursuant to CPLR
article 78, to review a certain regulation promulgated by
respondent Commissioner of Mental Health.

        Petitioner New York State Correctional Officers and Police
Benevolent Association, Inc. (hereinafter NYSCOPBA) represents
certain personnel at psychiatric centers operated by respondent
Office of Mental Health (hereinafter OMH).  Petitioner Richard

McPhillips is employed at Mid-Hudson Forensic Psychiatric Center. In December 2013, OMH promulgated an emergency regulation that required personnel in psychiatric centers operated by OMH and psychiatric facilities licensed under Mental Hygiene Law article 31 who had not been vaccinated against influenza to wear face masks in areas where patients might be present during influenza season (see 14 NYCRR former 509.4 [c]). Petitioners thereafter commenced this CPLR article 78 proceeding contending, as pertinent here, that the emergency regulation was arbitrary and capricious. Respondents answered and sought dismissal of the petition. Supreme Court dismissed the petition and petitioners appeal.

Initially, we find that petitioners' claims were not rendered moot by the expiration of the emergency regulation and OMH's subsequent adoption of a permanent regulation that incorporates the mandatory mask-wearing requirement into its rules pertaining to the prevention of influenza transmission (see 14 NYCRR part 509).[1] A proceeding is not moot when "the rights of the parties will be directly affected by the determination of the [proceeding] and the interest of the parties is an immediate consequence of the judgment" (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]; accord Matter of King v Jackson, 52 AD3d 974, 975 [2008]). Here, petitioners challenged the permanent regulation by commencing a separate special proceeding in Supreme Court, which has been marked off the court's calendar pending the outcome of this appeal; petitioners assert — and respondents agree — that a determination upon the merits in this appeal will also decide the outcome of the challenge to the permanent regulation.

The adoption of a new law does not moot a challenge to the validity of an older law, even when the older law has been superseded, when both laws suffer from the same alleged infirmities such that a challenge to the new law will be affected by the resolution of the claims regarding the older law (see Matter of City of Glens Falls v Town of Queensbury, 90 AD3d 1119,

---

[1] The emergency regulation expired by its terms 90 days after it was enacted.

1120 [2011]; Matter of Westbury Trombo v Board of Trustees of Vil. of Westbury, 307 AD2d 1043, 1045 [2003]).  Here, as originally enacted, the language of the permanent regulation, codified at 14 NYCRR 509.4 (c), was identical to that of the emergency rule.  Thereafter, minor amendments somewhat narrowed the scope of the regulation (see 14 NYCRR 509.4 [c] [1], [2], [3]).  However, as this Court recently determined in an analogous case, these alterations neither "meaningfully change[d] the mask-wearing requirement for non-vaccinated personnel" nor "adversely affect[ed] or change[d] the basis of petitioners' challenge to the regulatory requirement" (Matter of Spence v Shah, 136 AD3d 1242, 1244 [2016]; see 10 NYCRR 2.59 [d] [1], [2], [3]).  Here, as in that matter, personnel who are currently subject to the permanent regulation will be affected if petitioners are successful in challenging its predecessor.  Thus, the matter is not moot.

Turning to the merits, petitioners contend that the mandatory mask-wearing requirement is arbitrary and capricious because it fails to take into account the special circumstances present in psychiatric facilities.[2]  "[OMH] is entitled to a high degree of judicial deference, especially when act[ing] in the area of its particular expertise, and thus petitioners bear the heavy burden of showing that [the regulation] is unreasonable and unsupported by any evidence" (Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 544 [2006] [internal quotation marks, ellipsis and citation omitted]; see Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 331 [1995]; Matter of Brooklyn Hosp. Ctr. v Shah, 101 AD3d 1546, 1547 [2012], lv denied 21 NY3d 851 [2013]).  Petitioners assert that the job responsibilities of the affected personnel include such functions as assisting psychiatric patients in their treatment and rehabilitation, maintaining their safety and security and modeling appropriate behavior, and that the mask-wearing requirement interferes with their ability to

_____

[2]  Due to the promulgation of the permanent regulation, petitioners are no longer seeking relief based upon OMH's alleged failure to comply with statutory procedures in adopting the emergency regulation.

communicate with patients, act as effective role models and otherwise perform their job responsibilities.

In support of the rationality of the challenged regulation, OMH submitted, among other things, the affidavit of Lloyd Sederer, the Chief Medical Officer for OMH, who averred that, in promulgating the emergency regulation, OMH was "following the lead" of the Department of Health (hereinafter DOH), which had recently promulgated a rule pertaining to the use of masks to prevent influenza transmission in health care facilities. Notably, this Court recently determined that the DOH regulation was not arbitrary, capricious, irrational or contrary to law (see Matter of Spence v Shah, 136 AD3d at 1246). Sederer averred that OMH relied upon the knowledge and expertise of DOH clinicians in deciding to adopt a similar regulation, including Emily Lutterloh, a DOH physician with expertise in infectious disease control and epidemiology. By an affidavit included within the record, Lutterloh describes DOH's reasons for adopting the mask-wearing requirement, including the significant annual mortality and morbidity associated with influenza, the serious risk it poses to persons in health care facilities, and the high risk of influenza transmission from health care personnel to patients. According to Lutterloh, workers who have been infected with influenza may expose patients to the disease by working before symptoms appear or while suffering from a mild form of the illness, and wearing a mask is an effective alternative to vaccination in reducing the risk of influenza transmission under such circumstances. In addition to relying upon the expertise of DOH, OMH also considered research and recommendations from various authorities such as the Centers for Disease Control and the Food and Drug Administration pertaining to the use of face masks to control the spread of disease. OMH also drew from its own particular expertise in treating the mentally ill in concluding that individuals with chronic and serious mental illness suffer higher rates of chronic physical illness than other persons and that recent influenza seasons had been more severe than in the past. Based upon the anticipated severity of the influenza season and the high rates of preexisting physical illnesses among OMH patients, OMH determined that the adoption of an emergency regulation to control influenza transmission was imperative to safeguard the health, safety and welfare of

patients.

Sederer addressed petitioners' specific concern that the use of masks hampers the ability to communicate with psychiatric patients, opining that masks do not significantly impede verbal or nonverbal communication, as any slight muffling of the voice can be overcome by minimal voice modulation, and the wearer's eyes, eyebrows, hands and body posture remain visible. Contrary to petitioners' contention, masks do not create blind spots in the wearer's vision, cover his or her eyes or block peripheral vision; Sederer noted that masks were worn at all times by clinicians in operating rooms, who required use of their full range of vision. As for petitioners' contention that masks detract from a worker's ability to be an effective role model for patients, Sederer opined that, on the contrary, wearing masks sets a good example by showing concern for the patients' health and welfare. Finally, Sederer disagreed with the contention that a metal nose band in the masks — which he described as "small, soft, flexible and flimsy" — could be fashioned into a weapon capable of inflicting serious harm.

Petitioners contend that the OMH regulation is arbitrarily enforced in that contractors, attorneys and visitors who enter psychiatric facilities are not required to use masks. Contrary to petitioners' claim, contractors are not exempt from the mask-wearing requirement; instead, the express terms of the regulation include "contract staff" in the definition of personnel who are subject to the mask-wearing requirement, along with employees, medical staff, volunteers and others, so long as they "engage in activities such that if they were infected with influenza, they could potentially expose patients to the disease" (14 NYCRR 509.3 [e]). As for visitors and attorneys, OMH took into account the fact that patients have statutory rights to receive visitors and have contact with their attorneys (see Mental Hygiene Law §§ 33.02 [9], [13]; 33.05; 14 NYCRR part 527), and further noted that visitors and attorneys typically spend a limited amount of time in psychiatric facilities and see only one patient at a time, thus diminishing the risk that they will transmit influenza. OMH concluded that the potential harm resulting from infringing upon patients' rights to interact with visitors and attorneys outweighed the risk of influenza transmission, and made

a reasoned, rather than arbitrary or capricious, decision to exclude visitors and attorneys from the mask-wearing requirement.

Taken as a whole, the record demonstrates that OMH did not disregard the special circumstances present in psychiatric facilities, but instead weighed these circumstances carefully and reached the reasonable conclusion that any disadvantages associated with mask-wearing in psychiatric facilities were outweighed by the substantial advantages they offered in preventing or reducing the transmission of influenza. Accordingly, petitioners did not meet their burden to demonstrate that OMH acted arbitrarily, capriciously or unreasonably in promulgating the challenged regulation (see Matter of Spence v Shah, 136 AD3d at 1246).

Egan Jr., Lynch, Devine and Clark, JJ., concur.


ORDERED that the judgment is affirmed, without costs.


ENTER:


Robert D. Mayberger
Clerk of the Court